EMMA E. WOLF, APPELLEE, V. JOSEPHINE HASLACH, APPELLANT.

FILED JULY 1, 1902. No. 11,609.

Commissioner's opinion, Department No. 1.

1. **Bill of Sale:** REVERSIONARY INTEREST: NOMINAL CONSIDERATION: PAROL EVIDENCE OF CONSIDERATION. A bill of sale of a reversionary interest in funds belonging to an estate, which recites a consideration of one dollar, does not prevent evidence by parol that the real consideration was that the assignee should hold the funds on the same terms, and for the same purposes as an executor had previously done.

2. **Trust in Chattels:** ABSENCE OF FRAUD: AGREEMENT. As between the parties, and in the absence of fraud, an agreement creating a trust in chattel property need not be in writing.

APPEAL from the district court for Platte county. Heard below before HOLLENBECK, J.  *Affirmed*.

*McAllister & Cornelius*, for appellant.

*Reeder & Albert* and *R. W. Hobart*, contra.

HASTINGS, C.

This case is an appeal from a decree of the district court for Platte county, perpetually enjoining defendant Josephine Haslach from collecting or attempting to collect from Theodore Wolf $3,000, and interest from January 4, 1900, and enjoining Theodore Wolf from paying it to her.  The decree also appointed Hans S. Elliott trustee of the fund in the hands of Theodore Wolf, and authorized him to collect it from Theodore Wolf, with 6 per cent. per annum interest from January 4, 1900, and invest it to the best advantage, and pay the interest to Mrs. Haslach during her life, and at her death pay the principal to the plaintiff.  The trustee was empowered to use $66.66 annually of the principal, if necessary, to maintain Mrs. Haslach. The trustee was required to give bond, and costs were taxed to Josephine Haslach, and she excepted and appeals from the decree.

At some time prior to 1888, Max Haslach died in Mercer county, New Jersey, and bequeathed his household furniture to Josephine Haslach, his widow.  The rest of his property he left to his executor; the income to be paid to the widow semi-annually and on her death or remarriage to go to the testator's three children in equal shares. If the income was insufficient to support the widow in comfort, then not to exceed $200 per annum might be applied to that purpose.  The children seem to have removed to the west in 1888 or before.  In that year Mrs. Haslach visited them in Iowa.  Her son-in-law Theodore Wolf proposed to pay her 7 per cent. per annum for her money.  There was $3,000 bearing 6 per cent. in New Jersey and $3,000 bearing 5 per cent. interest, and a house worth about

$3,000. The latter was sold later for $2,800. In 1889 the following assignment was executed by the son and his wife and the daughters and their husbands:

"Know all men by these presents: That we, Henry M. Haslach and Mary E. Haslach, his wife, of the town of Lyons, county of Clinton, and state of Iowa, Theodore Wolf and Emma E. Wolf, his wife, of the town of Creston, in the state of Nebraska, and William Henry Beck and Josephine Beck, his wife, of the city of Trenton, in the county of Mercer, and state of New Jersey, in consideration of one dollar, lawful money of the United States, to us paid, before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have sold, assigned, transferred and set over, unto Josephine Haslach, of the city of Trenton aforesaid, all our right, title and interest in and to the estate, both real and personal of Max Haslach, deceased, to which we or either of us have any right, title or interest either by purchase, descent or devise, or in any other manner or way, and we do each and every [one] of us authorize and empower the said executor of the said Max Haslach, deceased, to pay unto the said Josephine Haslach, our shares or share of the said estate, or such part thereof as may be in his hands as personal property, hereby waiving all benefit, profit, or advantage that may or might accrue to us to the contrary, notwithstanding. In witness whereof we have hereunto set our several hands and seals this twenty-eighth day of November, eighteen hundred eighty-eight."

Eight thousand seven hundred dollars was placed in the hands of Theodore Wolf, and some securities given to Mrs. Haslach. The matter seems to have run on until in 1897. Mrs. Haslach and some of her children became dissatisfied with Wolf's securities, and concerned for the safety of the fund. An action was instituted which resulted in a decree against him for $8,700. This seems to have been all paid except $3,000. Emma Wolf, the wife of Theodore, and the daughter of Mrs. Haslach, brought this action to enjoin the collection of the remainder, and

obtained the appointment of a trustee to manage it according to the terms of the will; alleging that her mother was insolvent and was claiming an absolute ownership under the assignment, instead of her life interest, as provided by the terms of the will. The daughter also claimed that the assignment was merely in order to facilitate the removal of the funds from New Jersey and from the custody of the executor to Nebraska, and to the charge of Mr. Wolf. She further declared that it was agreed that $3,000 of the money should remain in Mr. Wolf's hands till the mother's death, and then be paid to Mrs. Wolf; the mother to have the interest. Mrs. Haslach answered, admitting the facts alleged, down to and including the execution of the assignment, and denied the rest. At the trial the daughter and her husband testified to the arrangement that the $3,000 should remain with Mr. Wolf till the mother's death, and then be paid to Mrs. Wolf, and that the assignment was simply to help the transfer of the fund west. The mother and another son-in-law, Beck, testified that there was no arrangement of the kind, and that all the money was simply loaned for five years at 7 per cent. per annum.

The trial court having found for plaintiff on this evidence, which is admittedly conflicting, Mrs. Haslach's appeal now rests on the proposition that the evidence to show the matters extraneous to the assignment is inadmissible. First, as attempting to vary a written instrument by oral evidence; and, second, as attempting to establish a trust in the same manner. Some claim is made that the decree is not supported by sufficient evidence, but appellant's own statement of what it is, shows a conflict as to the essential matters. These are, of course, the question as to whether the assignment was simply to facilitate the removal of the funds west, and whether it was arranged that Mr. Wolf should hold the $3,000. If these matters were proper to be shown, there is enough to warrant a court in finding they were shown. There was also enough of claim that the assignment was absolute

to warrant the court in appointing another trustee, if Mrs. Haslach's holding of the securities was simply that of trustee. It, therefore, seems that the main question is simply whether, under the circumstances, the evidence to make the assignment one in trust was properly received and should be now considered. It was nearly all of it taken without objection, and none of it objected to at the time as tending to vary the terms of a written instrument. The objection does not seem well taken. The assignment is unilateral. It purports to convey to the mother all the rights of the heirs in the trust fund. It recites a consideration of one dollar. Does evidence that this transfer was made by the grantors merely to enable the life beneficiary to transfer the funds to another place of investment, and was so accepted by her, vary or contradict this agreement? The answer at once is that it does contradict the recital of the consideration. The consideration recited is one dollar. The evidence is that nothing was paid. The evidence is that the consideration was the removal of the funds, and finding of a new investment for them, and the arrangement that the assignee hold them subject to the trust. "The parol-evidence rule" is stated by an English judge as simply requiring, when the parties have put their agreement in writing, that the writing shall be taken to show what the agreement is. The recital of the consideration, however, has not the same conclusiveness. It has been often held that the consideration of a bill of sale may be shown to have been different from that recited. 1 Greenleaf, Evidence, sec. 285; 2 Jones, Evidence, sec. 475; *Nedvidek v. Meyer,* 46 Mo., 600; *Halpin v. Stone,* 78 Wis., 183. Numerous cases to the same effect will be found in Century Digest, vol. 20, col. 2733 and following.

There seems no reason why it was not competent for the plaintiff to prove, if she could, that the real consideration for this assignment was the agreement that the mother should hold the funds on the same terms as the executor had done. The surrounding facts corroborate the claim, and there is evidence sufficient to support the court's

finding of such an arrangement. It does not seem, either, that as between the parties, there was any necessity that the arrangement should be in writing. All the cases with regard to the necessity of a writing to establish a trust which have been cited to us involve real estate, and of course, are governed by the statute of frauds. There seems no reason why the contract, if made, was not both provable and valid. 2 Story, Equity Jurisprudence, sec. 972, and note *b*.

We conclude that the real question in this case was as to the existence of such an agreement, and as to that it is recommended that the judgment of the district court be affirmed.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.