DAISY G. MALLARD v. CHARLES M. EWING

164 So. 674.

Division B.

Opinion Filed April 5, 1935.

On Rehearing December 19, 1935.

Rehearing Denied January 6, 1936.

*Robert C. Lane,* for Appellant;

*Brown & Wood,* for Appellee.

ELLIS, P. J.—Daisy O. Mallard, the appellant in this case, owed Charles M. Ewing two thousand dollars and gave her promissory note to him in that sum payable two months after its date.

The note was dated June 1, 1933, and the payment of it was secured by a mortgage upon a lot of land in Coral Gables. The day after the due date of the note Ewing exhibited his bill in the Circuit Court for Dade County to enforce the lien of the mortgage. A copy of the mortgage is attached to the bill of complaint. Neither the promissory note nor a copy of it is attached to the bill. The mortgage, however, contains a copy of it. The note contained a clause providing that the maker agrees to pay a "reasonable attorney's fee in case the principal of this note or any payment on the principal or any interest thereon is not paid at the respective maturity thereof, or in case it becomes necessary to protect the security hereof, whether suit be brought or not."

The bill does not allege that the complainant is either the owner or holder of the note and a motion to dismiss the bill was made on that ground and was denied.

The defendant answered setting up a counter claim which it is averred arose in the following manner. At the time the defendant purchased the property from Ewing the latter agreed to transfer and deliver to her all the furniture, furnishings and fixtures contained in the Margoel Apartments" located upon the lot purchased; that there were to be excepted therefrom only one lamp, a picture and a small table located in Apartment 1; that all other furnishings, furni-

ture and fixtures contained in the apartments were purchased by the defendant from Ewing and his wife; that Ewing also agreed to pay rent to the defendant for the use of Apartment 2—a reasonable and fair rental for the same; that Ewing became indebted to the defendant from the rental of the apartment for the month of June, 1933, and for three weeks during the month of July, 1935, and that a reasonable rental of the apartment for that length of time was eighty-seven dollars and fifty cents; that at the time Ewing delivered the "Margoel Apartments" to the defendant he removed therefrom various items of furniture amounting in value to one hundred and forty-one dollars and twenty-five cents. A list of the furniture removed is set out in the answer.

. So the defendant alleges that the amount of her counter claim against the complainant is two hundred and twenty-eight dollars and seventy-five cents, which deducted from the principal and interest due on August 1st, the due date of the note, left a balance of seventeen hundred and ninety-seven dollars and ninety-two cents, which sum she offered and tendered to pay to Ewing on August 1, 1933, but which he refused to accept.

, The answer also avers that the defendant owes nothing to the complainant on account of solicitor's fees.

·· A motion was made to strike from the answer the facts averred as constituting the counter claim. The Chancellor granted that motion, but later annulled that order and denied the motion to strike the matters of fact pleaded as a counter claim. That order is made the basis of the appellee's cross assignment of error.

The complainant then filed a replication to the defendant's answer in which he undertook to plead "not guilty" to what he construed as an averment in the defendant's

answer as a conversion of personal property, and alleged that he agreed to pay a rental of thirty-five dollars per month for the apartment which was the sum charged other tenants and he tendered to the defendant a sum of money computed on that basis but the defendant refused to accept it. The replication also alleges that the counter claim made up of the two items of damages for conversion of personal property amounting to $141.25 and the sum of $87.50 for rent of the apartment are triable in a court of law and not in equity.

Whatever name may be given to that document it was wholly out of place and unknown to the practice in this State under Chapter 14658, Acts 1931, known as the Chancery Act, which definitely by Section 37 abolishes general replications. Certainly no plea of not guilty or never was indebted has any place in a suit in equity. Special replications were pleadings in confession and avoidance and have long been superseded by the practice of amending the bill and are entirely obsolete. See McCarthy's Annotation to Sec. 37, Chancery Act, *supra*.

If the counter claim set up in the answer be regarded as averring any new or affirmative matter it is deemed under Rule 37, Chancery Act, *supra,* to be denied by the plaintiff, If a reply to the counter claim with a prayer for affirmative relief was necessary the complainant should have set up the facts relied upon in answer to the counter claim.

The replication insofar as it related to part of the counter claim, consisting of a claim for rent of the apartment may be regarded as setting up the facts relied upon in answer to that part of the counter claim, but it was wholly unnecessary even if it constituted a counter claim, because the facts therein alleged would be admissible under the denial deemed to be made by the complainant.

The court, however, denied a motion to strike the replication, which motion rested upon the ground that the replication was not filed within the time required by Rule 38 of the Chancery Act, *supra*. That order was erroneous, as was the order denying the motion to strike the replication.

These orders, however, were of no material effect as the case proceeded to the taking of testimony all of which may have been done without a replication such as was interposed.

A special master was appointed to take the testimony and report to the court his findings of law and fact.

The substance of the report on the facts was that the defendant purchased from the complainant an apartment house together with certain furniture therein located; that the transaction was consummated as of June 1, 1933, "although the actual recording of the papers and probably the delivery of them, was actually consummated a few days later." The master found that the "transaction was closed by the execution of a deed by the complainant, who accepted as part of the purchase price the note of the defendant, secured by a mortgage for $2,000.00 due August 1st, 1933, and that also the furniture was conveyed by a bill of sale with an inventory of the same attached."

His findings relating to the charge for rent of one apartment were that the complainant demanded fifty dollars per month but afterwards agreed to accept thirty-five dollars per month and then refused to accept a settlement on that basis.

The bill of sale was dated May 23, 1933, and purported to sell and transfer the "following goods and chattels: Furniture, furnishings and fixtures contained in the MARGOEL APARTMENTS, at 32 Avenue Santillane, Coral Gables,

Florida, more particularly described as follows." The record shows that the inventory of the furniture was included in the document called a bill of sale but the Master found that the inventory of the furniture was "attached" to the instrument. He also found that as the list of furniture for the value of which the defendant set up a counter claim was not included in the "bill of sale of the furniture delivered at the time the transaction was closed," the defendant was not entitled to the furniture set forth in the counterclaim.

The Master also found that neither claim of the defendant was "the proper subject matter of a setoff against the foreclosure of a mortgage for the reason that they arose independent of the execution of the mortgage; but since the court has denied the motion to strike these portions of the answer, the Master feels obligated to make a finding upon the equities of the case independent of the question of the pleadings." He proceeds then to find that as the "bill of sale contains no blanket clause nor purports to cover any furniture except that which is therein listed, the Master is of the opinion that the defendant is not now and never was entitled to the furniture set forth in the alleged counterclaim or to the value thereof." He further found that the complainant had "incurred an obligation for attorney's fees in such amount as the court shall deem reasonable, which amount I find from the evidence to be $300.00, all of which said amounts constitute a first lien upon the property described in the bill of complaint."

Exceptions were interposed by the defendant to the Master's report as to the counter claim and the allowance for attorney's fees, which were overruled and the court on April 4, 1934, affirmed the findings of the master and by final decree ordered the defendant to pay the complainant

the principal sum of two thousand dollars, interest in the sum of one hundred and thirty-three dollars and thirty-five cents and three hundred dollars solicitor's fees.

From that decree the defendant appealed.

So much of the Chancellor's decree that disallowed the claim for rent was correct and is affirmed because that claim neither grew out of the original transaction nor is the basis of any equitable demand. Both from the answer and the evidence in the case the claim arose from a contract separately and independently of the original transaction for the rental of an apartment. It was the basis of an action at law and has no relation to an equitable demand, nor may it be considered as a part of the consideration moving to the defendant for the purchase of the property. Insofar, therefore as that item was permitted to remain in the answer as part of the counter claim the order of the Chancellor was erroneous as made on December 4, 1933, allowing both items, the claim for rent and value of furniture not delivered to remain as constituting one counter claim. That error was harmless, however, as it was afterward corrected in the final decree disallowing the claim for rent.

So much of the decree as disallowed the claim for the value of the furniture not delivered to the defendant or removed from the apartment by the complainant is erroneous, because both the answer and the evidence show and the Special Master expressly found that the transaction consisted of the purchase by the defendant from the complainant of an apartment house and certain furniture therein located. Part of the consideration moving to the defendant for the promise to pay the price of seventy-five hundred dollars for the property was the furniture, furnishings and fixtures in the apartment house with the exception of the three articles named: a lamp, a picture and a small table in,

Apartment 1. The bill of sale described the chattels in general terms as furniture, furnishings and fixtures contained in the Margoel Apartments, "more particularly described as follows." No description follows, but there appear the words "(attached by clips Inventory, as follows)."

The bill of sale recites the consideration to be "Ten Dollars, and other good and valuable considerations," but it is not the claim of either party that there was a separate consideration of "Ten Dollars, and other * * * considerations" moving to the complainant for the sale of the chattels and fixtures. The consideration agreed to be paid for the property was seventy-five hundred dollars and the property included, according to the counter claim, not only the apartment house, but the chattels and fixtures therein contained with the exception of the three items named in apartment one.

The bill of sale with the attached inventory was therefore merely a recitation of that part of the consideration moving to the defendant for the purchase of the entire property. The inventory, which was attached to the bill of sale and which according to the complainant recited all that part of the consideration relating to the chattels, is merely explanatory, if indeed not contradictory of the general consideration moving to the defendant expressed in the bill of sale as the "Furniture, furnishings and fixtures contained in the Margoel Apartments." The bill of sale was given in fact without any new consideration of agreement and was intended merely to aid the defendant in retaining possession of the furniture, furnishings and fixtures contained in the apartments.

Formerly it was the general rule that where the consideration was expressly stated in the instrument as being the entire consideration and none other was referred to in gen-

eral terms, the consideration so expressed was regarded as the whole consideration and precluded parol evidence of a consideration differing in amount or quantity from that expressed. Sec. 3 Ency. of Evidence 380.

That doctrine, however, has undergone a marked change so that a wider latitude of inquiry into the consideration of written instruments is allowed and the rule is now generally recognized that the true or real consideration of the instrument may be shown by either party by any competent evidence although the consideration so shown may be different in amount or quantity from the consideration expressed provided it is not inconsistent with it. See Sullivan v. Lear, 23 Fla. 463, 2 South. Rep. 846, 11 Am. St. Rep. 388; 5 Ency. of Ev. 382.

In a case where property was conveyed and there was a parol agreement that it should not be used for a limited period for the sale of intoxicating liquors, it was held that the plaintiff might show by parol evidence that a part of the consideration was an agreement on the part of the defendant that he would not use the premises for such purpose. The court said it will be remembered that it is not the office of the deed to express the terms of the contract of sale but to pass the title pursuant to the contract, therefore a parol agreement, being a part of the contract of sale, restricting the use of the premises in one particular for a limited period, is not merged in the deed, and does not qualify or in any way affect the title to the land; and the admission of parol evidence to prove such an agreement is no infringement of the rule that parol evidence is not admissible to contradict, vary or explain a written instrument. See Hall v. Solomon, 61 Conn 476, 23 Atl. Rep. 876; 29 Am. St. Rep. 218. See also Hill v. Whidden, 158 Mass. 267, 33 N. E. Rep. 526; Wolf v. Haslach, 65 Neb.

303, 91 N. W. Rep. 283; Pickman v. Trinity Church, 123 Mass. 1, 25 Am. St. Rep. 1; Worthington v. Bicknell, 2 Har. & J. (Md.) 58, where the consideration for a mortgage was expressed to be specie, evidence was admitted to show it to be continental money. Logan v. Miller, 106 Iowa 511, 76 N. W. Rep. 1005.

It is also a generally recognized rule that parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change or reform the instrument. It is true that such rule requires the agreement to be shown by evidence that is clear, precise and indubitable; that is it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify and that they narrate the details exactly and that their statements are true. See Walker v. France, 112 Pa. St., 203, 5 Atl. Rep. 208; Thomas & Sons v. Loose, 114 Pa. St. 35, 6 Atl. Rep. 326; Ferguson v. Rafferty, 128 Pa. St. 337, 18 Atl. Rep. 484, 6 L. R. A. 33.

The purchase of the apartments and furniture and furnishings therein contained was one transaction. The bill of sale was merely part of the transaction which instead of being incorporated in the deed of conveyance to the apartments was used to evidence the defendant's title to the furniture and fixtures acquired with the acquisition of the apartments. In these circumstances parol evidence was admissible to show the true consideration and the contemporaneous agreement of the parties which induced the defendant to purchase.

So much of the Chancellor's decree therefore as approved the Master's finding of law and fact upon that feature of the controversy was error.

The counter claim for the value of the furniture and fur-

nishings and fixtures which the complainant withheld or withdrew from the premises should not have been excluded from consideration because such items of chattels were not included in the list attached to the bill of sale. Evidence should be admitted and considered by the court as to the facts of the agreement between the parties respecting those matters and a conclusion reached according to the rules above announced as to the probative force of the evidence.

So much of the Chancellor's decree as approved the Master's findings relating to solicitor's fees and so much of the decree as awarded solicitor's fees are also erroneous.

This subject has been discussed by this Court sufficiently to clearly establish the rule by which the trial courts of this State should be guided in such matters. The rule, to again restate it, is: "Fees allowed mortgagee for his solicitor's services in foreclosure proceedings being intended as indemnity for *expenditures* necessarily made or incurred to protect his interest, he can recover from mortgagor only usual and customary fees *which* he *has paid* or obligated *himself* to *pay solicitor.*" (Emphasis supplied.)    Brett v. First Nat. Bank, 97 Fla. 284, 120 South. Rep. 554.

In that case the Court, speaking through Mr. Circuit Judge Giblin, said: "It cannot be logically argued that the defendant herein should have the burden of proving that the complainant has not paid, or obligated itself to pay, to its solicitors as fees for their services the sum allowed by the chancellor below. The burden is upon him who seeks to recover damages to prove that he is entitled to such recovery and to establish the basis for the computation or determination of the amount." See Brooks v. Roberts, 97 Fla. 374, 120 South. Rep. 765.

The testimony of the complainant shows that he did not

obligate himself to pay his solicitor for the service to be performed. He said there was "No verbal conversation about it." How then could there be an agreement between them? He also said there was no discussion about "percentage at all," and in answer to a question as follows: "Are you obligated today to pay Mr. Wood any amount of attorney's fees in this matter?" he answered as follows: "Only so far as the law will require. No verbal conversation about it."

Here was a clear evasion of the question. The phrase "Only so far as the law will require" could not mean that he had obligated to pay the solicitor whatever reasonable fee the court would allow, because as there was no conversation about it there could be no obligation on his part to pay such allowance. His testimony is entirely consistent with an understanding between him and his counsel that whatever the latter could get out of the proceeds of the sale after the payment of the plaintiff's claim, with no obligation on the complainant's part to pay would be agreeable to complainant. But equity will tolerate no such arrangement. See Blount Bros. Realty Co. v. Eilenberger, 98 Fla. 775, 124 South. Rep. 41; Hatch v. Trabue, 99 Fla. 1169, 128 South. Rep. 420; Realty Bond & Share Co. v. Engler, 104 Fla. 329, 143 South. Rep. 152; Vieno v. Fields, 101 Fla. 191, 133 South. Rep. 891.

It does not appear from the pleadings in the case that the defendant made good the tender of the amount she claimed to be due by a *profert in curia*. She therefore may not obtain the benefits of her averred tender in computing the balance due on the mortgage. See Haughey v. Heaney, 89 Fla. 102, 103 South. Rep. 400.

The decree is reversed with instruction to disallow solicitor's fees and to consider the evidence as to the question

whether the furniture, furnishings and fixtures listed in the answer and averred by the defendant to have been withdrawn or removed by the complainant were in the apartment at the completion of the transaction and whether they in fact were intended by the parties to pass with the transfer of the apartment. If that issue is found for the defendant, then to ascertain the value of such chattels and allow such value as a credit upon the mortgage debt remaining due after the application of that credit.

Reversed.

TERRELL and BUFORD, J. J., concur.

WHITFIELD, C. J., concurs in the opinion and judgment.

DAVIS, J. (concurring in part, dissenting in part).—I concur in all that is contained in Mr. Justice ELLIS' opinion except condemnation of the attorney's fees allowance. It is a rash thing to presume that the attorney for the mortgagee intended his legal services as a gratuity to his client. If he did not, the law will imply an enforceable promise from the client to pay a reasonable fee for foreclosing the mortgage. Why cannot indemnity against what the law will imply as a recoverable attorney's fee be recovered in a case like this? I think it can be on the very principle which is cited to deny it, namely indemnification.

## ON REHEARING

ELLIS, P. J.—A rehearing was granted in this case upon the view expressed by this Court in its opinion that the allowance of solicitors' fees by the Chancellor was erroneous. The point was discussed in oral argument on the 24th of September. The writer of this opinion was absent by reason of a physical ailment for which he was being treated in a hospital.

The Court, by a majority of its members, has decided to recede from its holding on the matter of the allowance of solicitors' fees and adopt the rule that when a mortgagee delivers to an attorney or solicitor a mortgage to be fore-closed, or to render any service in the matter of collecting the indebtedness secured by such mortgage, he assumes an obligation to the attorney to pay the latter a reasonable compensation for his services without reference to the provisions in the evidence of the indebtedness, either note or mortgage.

If the note or mortgage evidencing the indebtedness contains a promise or agreement to pay a definite sum to the promisee or mortgagee for attorneys or solicitors, that specific sum may not be recovered unless the promisee or mortgagee has definitely agreed or obligated himself to his attorney or solicitor to pay that definite sum for the service to be rendered which the attorney or solicitor may recover from his client by an action at law whether the promissor or mortgagor is insolvent or not and the security is not sufficient to pay the judgment or decree which may be obtained.

The rule announced in the case of Brett v. First Nat. Bank of Marianna, 97 Fla. 284, 120 South. Rep. 554, is construed to mean that the recovery of solicitors' fees by the mortgagee may in no case exceed the sum he has actually paid to his solicitor or by agreement express or implied obligated himself to his solicitor to pay for the service to be rendered. See Berns v. Harrison, 100 Fla. 1105, 131 South. Rep. 654; Jaudon v. Equitable Life Assur. Soc. of United States, 102 Fla. 782, 136 South. Rep. 517; U. S. Savings Bank v. Pittman, 80 Fla. 423, 86 South. Rep. 567; Hatch v. Trabue, 99 Fla. 1169, 128 South. Rep. 420; Blount Bros. Realty Co. v. Eilenberger, 98 Fla. 775, 124 South.

Rep. 41; Sun City Holding Co. v. Schoenfeld, 97 Fla. 777, 122 South. Rep. 252.

Applying the rule as thus construed and following the interpretation placed on it in Jaudon v. Equitable Life Assur. Soc. of United States, *supra*, and Blount Bros. Realty Co. v. Eilenberger, *supra,* the Court now holds that so much of the decree as allowed the recovery of solicitors' fees is affirmed.

The writer of this opinion agrees to the rule as thus interpreted and he is of the view that the former opinion in nowise runs counter to such interpretation. The former opinion in the view of the writer merely held that the "testimony of the complainant shows that he did not obligate himself to pay his solicitor for the service to be performed."

The writer is still of that opinion; that there was neither an express nor an implied promise to pay a definite sum or a reasonable fee for the service to be rendered. On the other hand there was a clear evasion of the question by the mortgagee when he was asked if he was obligated to pay Mr. Wood any amount of attorney's fees in the matter.

My colleagues, however, are of a different opinion, deeming the evidence sufficient to establish an implied liability upon the complainant to pay his solicitor a reasonable fee for the services of his solicitor.

The Court therefore recedes from its former decision in so far as it affects that portion of the decree relating to attorney's or solicitor's fees, and affirms that phase of the decree. In all other respects the former judgment of this Court is reaffirmed.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.