Cornhusker Development and Investment Group, Inc., a corporation, appellant, v. Harry Knecht, appellee.

146 N. W. 2d 567

Filed November 18, 1966.   No. 36291.

Pierson & Pierson, for appellant.

Norman E. Stephens and Emory P. Burnett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and MANASIL, District Judge.

BROWER, J.

This is an action brought by the plaintiff and appellant Cornhusker Development and Investment Group, Inc., a corporation, to recover on a promissory note given by the defendant, Harry Knecht, under a subscription contract executed by the defendant for stock in the plaintiff corporation.

The trial court submitted to the jury the sole question of whether there was a failure of consideration for the promissory note. The jury returned a verdict for the defendant and a judgment was entered thereon.

The plaintiff has appealed from the judgment to this court. There is no cross-appeal.

On July 23, 1963, the defendant executed a subscription agreement for the purchase of stock in the plaintiff corporation to be formed by the subscribers for such stock, pertinent portions of which are here set forth: "WHEREAS, it is proposed to organize a Nebraska Corporation to be known as 'Cornhusker Development and Investment Group, Inc.;' and * * * it is proposed that said corporation shall be authorized to engage in any business that is permitted a Nebraska corporation, including and with emphasis upon the development of its assets through the acquisition, formation and/or capitalization of wholly-owned, majority-owned or substantially-owned corporations for the establishment of convalescent, rest, care and nursing homes; * * * no salesman or any other person has been authorized to give any information or make any representations other than those contained in this agreement, and, if given or made,

such information or representations must not be relied upon as having been authorized;

"NOW THEREFORE, the undersigned, in consideration of the Subscription Agreements of other incorporators and founders, does hereby agree with such other incorporators and founders, and with Edwin C. Bowman and his associates, the organizer of said corporation, that the undersigned does hereby subscribe to 80 shares of the common stock of the proposed corporation at the price of Twenty-five and No/100 Dollars ($25.00) per share, said sum being due and payable upon the execution of this Subscription Agreement. * * * NO GUARANTEES OR REPRESENTATIONS ORAL OR WRITTEN ARE MADE TO THE UNDERSIGNED EXCEPT THOSE EXPRESSLY SET OUT IN THIS SUBSCRIPTION AGREEMENT." On that day he gave a check for $500 and executed the promissory note involved in the action for $1,500.

On August 30, 1963, the articles of incorporation of plaintiff were filed and recorded in the offices of the Secretary of State and of the county clerk of Lancaster County, its principal place of business being in Lincoln. The articles of incorporation were signed by the defendant and acknowledged by him on August 21, 1963, as one of the incorporators. The general nature of the business of the corporation stated therein closely follows that contained in the subscription contract. It was to start business at once. Its affairs were to be conducted by a board of directors elected by the stockholders.

Over objections that there was no proper or sufficient foundation, that it was incompetent, irrelevant, immaterial, and tending to alter the terms of a written agreement, the defendant was allowed to testify that sometime in the evening of July 23, 1963, Ed Bowman and Harold Pritz came to defendant's home in Loup City and induced him to sign the note now in litigation as well as a check for $500. Defendant wanted to discuss the matter first with others who are not identified by

him, but was told that all of them had given $500 and a note and that he was holding everything up. He later found some of these unnamed persons had paid $200, some $300, and some $2,000.

They also at that time told him that if a nursing home was not built in Loup City, he would receive a refund of $300 and the note would be returned. Defendant was also told on this occasion that the proceeds of the check would be placed in the bank in escrow until construction of a rest home was started in Loup City and that the note would be similarly escrowed. The endorsement on the check shows that it was not placed in escrow, but rather that it was deposited to plaintiff's general account.

Over similar objections, other subscribers testified to similar statements, some of which were made to them by Bowman without the presence of the defendant.

On July 30, 1963, the defendant and four others, who later also signed the articles of incorporation as the first parties, executed a written agreement purportedly signed on behalf of the plaintiff as second party by Edwin C. Bowman, the promoter mentioned in the agreement of July 23, 1963. It recites the desire of the first parties to have a care or rest home built and operated in Loup City and that the second party desires to build and operate such a home therein and desires the help, co-operation, planning, and opportunities offered by the parties of the first part. It then provided: "NOW, THEREFORE, party of the second part, in consideration of the signing of Subscription Agreements with Cornhusker Development and Investment Group, Inc., by parties of the first part, does hereby covenant, agree and obligate itself to erect, construct, manage, operate and maintain in Loup City, Nebraska, a nursing, care or rest home upon such terms, conditions and provisions as may be mutually agreed upon by parties of the first part and party of the second part; it being understood by and between both parties hereto that there shall subsequently be entered into a contract more particularly defining

the specific rights, duties and obligations of the parties hereto.

"And parties of the first part, in consideration of this Agreement and the promises and covenants herein made by party of the second part, do pledge, promise and covenant that they will use their utmost efforts to secure and promote favorable conditions and cooperation in Loup City, Nebraska, to the end that party of the second part may promptly enter upon the construction, erection, management and operation of a nursing, care or rest home in Loup City, Nebraska."

Defendant, subsequent to executing the documents mentioned, on two occasions, the dates of which are not mentioned, attended meetings at Lincoln in which Bowman was present. At the first one Bowman was asked questions by certain persons who had put money in the corporation with respect to what was happening to it. He answered that it was in the bank and was to be subsequently accounted for. At the second meeting a report was given by him, but neither the report nor its substance are in evidence. Another one of the incorporators who attended a stockholders' meeting at Lincoln, also on an undisclosed date, testified that they found the corporation had no officers, and that an incorporator was to call another meeting and there "get officers" and set up the corporation.

It appears no stock had been issued to the defendant.

At the conclusion of the defendant's evidence, the plaintiff moved for a directed verdict for the amount of the note for the reason that the defendant had failed to prove any defense to the subscription agreement and note.

Plaintiff contends the trial court erred in failing to sustain its motion for a directed verdict and in admitting evidence concerning conversations with the promoter Bowman, stating a consideration at variance with that contained in the subscription contract; and that because thereof the verdict and judgment are contrary to the

evidence. We will consider this assignment of error first because if the plaintiff's contention is correct, it will control and determine our decision.

In Nebraska Chicory Co. v. Lednicky, 79 Neb. 587, 113 N. W. 245, this court laid down the following rules: "Any agreement by which a person shows an intention to become a stockholder in a corporation is sufficient as a contract of subscription, as against both himself and the corporation. * * *

"A subscription to corporate shares, made before the corporation comes into existence, but accepted by the corporation after coming into existence, either expressly by issuing the share certificates, or impliedly by recognizing the subscriber as a shareholder, makes him a shareholder, and the corporation may maintain an action upon the subscription against the signers."

In Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318, it was stated: "If the existence of a written contract has been induced by prior or contemporaneous oral agreement, parol evidence is not admissible to add to or contradict terms of the written contract.

"If negotiations between parties result in an agreement in reference to the subject matter thereof and if they reduce their agreement to writing, execute, and deliver it, the writing, in the absence of fraud, mistake, or ambiguity, is the only competent evidence of the contract."

In the present case, no issue of fraud, misrepresentations, or rescission was submitted to the jury, and the defendant, in his brief herein, expressly states that fraud or misrepresentation are not involved and that the sole defense is failure of consideration. Defendant contends, however, that failure of consideration has been shown. He cites section 62-128, R. R. S. 1943, from the Uniform Negotiable Instruments Law, to the effect that a failure of consideration is a matter of defense to a negotiable instrument, and therefore urges the true consideration for the note in suit may be shown, maintaining a failure

thereof appears from the evidence. Defendant relies on the case of Elmcreek Ditch Co. v. St. John, 127 Neb. 253, 255 N. W. 16. There the ditch company as plaintiff brought an action to recover on a stock subscription. The purpose of the corporation was to construct a ditch to conduct the water for irrigation. The note in question had set out on its face, " '3 assessments on ditch payment.' " The articles of incorporation of the company showed that no stockholder was to receive any benefit whatever aside from putting water upon his land for irrigation. Its by-laws provided that the company should deliver water to the land of each stockholder, or the amount of the subscription paid should be returned. The ditch on being built was 4 miles from the defendant's land. The court held under the negotiable instrument statute, then section 62-205, Comp. Stat. 1929, that failure of consideration could be shown. It was so shown and it conclusively appeared to be of no benefit to the defendant.

In the present case, the consideration was shown to be the stock subscription of July 23, 1963. Its provisions are set forth. However, the defendant seeks to vary the expressed consideration therein. "The parol evidence rule is one of substantive law as well as of evidence and as a rule of substantive law it renders ineffective proof of an oral prior or contemporaneous agreement the effect of which would be to vary, alter, or contradict the terms of a written agreement." Perry v. Gross, 155 Neb. 662, 53 N. W. 2d 73.

In Spiegal & Son v. Alpirn, 107 Neb. 233, 185 N. W. 415, this court held: "Where the statement in a written instrument as to the consideration is more than a mere statement of fact or acknowledgment of the payment of a money consideration, and is of a contractual nature, parol or extrinsic evidence is not admissible to vary or contradict the consideration expressed." The consideration in the subscription contract was contractual in nature and cannot be varied by oral contemporary evi-

dence. Particularly is this true where the agreement itself provides, as here, that "no salesman or any other person has been authorized to give any information or make any representations other than those contained in this agreement, and, if given or made, * * * must not be relied upon as having been authorized."

Defendant points to the fact that the subsequent written agreement of July 30, 1963, clearly provides that the plaintiff was obligated to build a care or rest home in Loup City, and contends that consequently this written agreement sets out true consideration which has failed. It appears to be an independent or collateral agreement to be performed in the future after incorporation. It recites the desire of the first parties to have a nursing, care, or rest home in Loup City and the desire of the second party (the plaintiff) to build it. It contains what purports to be an agreement of the plaintiff to build such a home in the future with the cooperation of the first parties. Its performance is to be governed by a subsequent contract to be entered into "defining the specific rights, duties and obligations" of the parties. Although the defendant knew this purported contract was executed by a promoter prior to the time of the plaintiff's incorporation, we think it unnecessary here to discuss the questions involving the scope of his authority. If the plaintiff became bound to build the rest home in Loup City by the subsequent agreement, there is no evidence which shows that it had repudiated such an agreement or intended not to comply therewith. The only evidence even remotely bearing on the plaintiff's intention with respect to building the home at Loup City after its organization occurred at the second meeting which the defendant attended at Lincoln at a date undesignated. The defendant testified: "Q And at the last meeting which you had in Lincoln where Mr. Bowman was present and subsequent to the formation of the corporation, was there any discussion at this meeting by any of the persons about building a home at Loup

City? * * * (Objections were here made by plaintiff's counsel and overruled.) BY MR. STEPHENS: Q State who made this proposal. Read the question back. * * * (The question previously stated was read to Mr. Stephens.) What was this—who made these statements about building a home at Loup City? A I can't remember. Q If you don't remember, just say so. A I don't remember. * * * Q Were there any statements by the officers of the corporation at that time made that the home would not be built at Loup City? A At that meeting, the last meeting at Lincoln, we had other troubles besides building a home. Q Were there any statements made that any home would be built anywhere at that time? MR. PIERSON: Objection to the question. Withdraw the objection. THE WITNESS: No." Where the defendant pleads a failure of consideration, he has the burden of proving it. 17A C. J. S., Contracts, § 583, p. 1120. We think testimony that at some particular meeting of the stockholders of the corporation at an undisclosed time no statements were made concerning building of any home is no proof whatever that there was a failure of consideration even with respect to the second agreement providing for such building in the future if the defendant was bound thereby.

The defendant claims the failure to place his check and note in escrow at the bank as testified to is a failure of consideration. This oral evidence is another variation in contradiction of the subscription agreement which sets forth the price to be paid for the shares, and states "said sum being due and payable upon the execution of this Subscription Agreement." Under the circumstances, it cannot constitute a part of the subscription agreement.

There appears to be some dissatisfaction with the management of the corporation and an intimation without proof thereof that it is in financial difficulties. "The mere mismanagement of the affairs of a corporation by its officers or agents does not warrant the withdrawal

therefrom of stockholders or the repudiation of the obligations assumed by them as such." American Building & Loan Assn. v. Rainbolt, 48 Neb. 434, 67 N. W. 493. Neither can the subscriber complain of the nondelivery of the certificates for stock until he has paid his subscription. Nebraska Exposition Assn. v. Townley, 46 Neb. 893, 65 N. W. 1062.

We have carefully examined the evidence and applied it to the law cited. We find no proof of the affirmative defense of failure of consideration for the note in action. That was the only issue submitted to the jury by the trial court and the only issue before this court on appeal. Plaintiff's motion for a directed verdict should have been sustained.

It follows that the judgment of the trial court must be and is reversed and the cause remanded with directions to enter judgment for the plaintiff for the amount of the defendant's note and interest.

REVERSED AND REMANDED WITH DIRECTIONS.