PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 13 2000
THOMAS K. KAHN
CLERK

_____

No. 99-10767

_____

D.C. Docket No. 95-00568-CIV-T-23E

BRUCE A. UNGERLEIDER, M.D.,

Plaintiff-Appellant,

versus

ROBERT P. GORDON,
HARVEST INTERNATIONAL OF AMERICA, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 13, 2000)**

Before COX, Circuit Judge, GODBOLD and MESKILL[*], Senior Circuit Judges.

MESKILL, Senior Circuit Judge:

_____

[*]Honorable Thomas J. Meskill, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

Plaintiff-appellant Bruce A. Ungerleider appeals from a judgment of the United States District Court for the Middle District of Florida, Merryday, J., summarily disposing of his claims sounding in securities fraud, common law fraud, contract, civil theft and conversion. The sole issue raised by Ungerleider on appeal is whether the district court erred in holding that an alleged oral agreement could not be enforced under the parol evidence rule. We find no error and affirm.

BACKGROUND

In 1991, Ungerleider began making a series of investments in defendant Phoenix Information Systems, Inc. (Phoenix), a startup company attempting to develop a travel reservations system for use in the United States and abroad. Defendant-appellee Robert P. Gordon was the chairman and CEO of Phoenix, as well as its largest shareholder. He was also the owner, chairman and CEO of defendant-appellee Harvest International of America, Inc. (Harvest). Between 1991 and 1993, Ungerleider invested over $800,000 in Phoenix, and his interests in the company were memorialized in over a dozen written agreements.

In 1992, Gordon and Harvest agreed to pay Ungerleider a finder's fee if he was able to secure additional financing for Phoenix from certain sources, including the prominent investor George Soros. Shortly thereafter, Gordon apparently also arranged for Robert Conrads to pursue additional financing for Phoenix. Conrads

2

succeeded in attracting Soros' interest in the investment. The defendants informed Ungerleider that an outside investor had been found, but they refused to identify him. The defendants also advised Ungerleider that the investor was unwilling to proceed unless Ungerleider relinquished his contractual interests in Phoenix.

On April 15, 1993, Ungerleider, Gordon, Phoenix and Harvest entered into a written agreement whereby Harvest and Phoenix were entitled to retain all the money invested by Ungerleider; Ungerleider was to receive 1.2 million shares of Phoenix; and all the prior agreements, including the finder's fee agreement, were revoked. Two of the relevant provisions of the April 15 agreement are set forth below.

> NOW THEREFORE, in consideration of the premises and of the undertakings and obligations herein contained and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

> . . .

> 14. Entire contract. This Agreement contains the entire under-standing of the parties and supersedes all previous verbal and written agreements. There are no other agreements, representations, or warranties not set forth herein.

Paragraph 5 of the agreement stated that Ungerleider was entitled to receive 1.2 million shares of Phoenix stock, and paragraph 3 stated that Ungerleider was

"entitled to receive the [Phoenix] Common Stock referred to in paragraph 5 hereof and no other stock or other consideration."

At the time the agreement was signed, Gordon conveyed to Ungerleider a stock certificate for 1.2 million shares of Phoenix. Both parties agree that the shares were not the same 1.2 million shares that Ungerleider was entitled to under the agreement. Ungerleider alleged that he received these initial shares as part of a contemporaneous parol agreement with Gordon to induce Ungerleider to sign the written agreement. The defendants contended in the district court that these initial shares were merely collateral until Ungerleider received the shares called for in the written agreement.

Gordon shortly thereafter regained possession of the initial shares, apparently by asking Ungerleider to return the stock certificate in order to effect a corporate name change. When Ungerleider was unsuccessful in demanding the return of the certificate, and after discovering that Soros was a significant source of the additional financing, he filed this suit. The defendants moved to dismiss, and the district court granted the motion in part and denied it in part. See Ungerleider v. Gordon, 936 F.Supp. 915 (M.D. Fla. 1996). Ungerleider filed an amended complaint, stating claims sounding in securities fraud, common law fraud, contract, civil theft and conversion. The district court granted an automatic stay with respect

4

to defendant Phoenix, which was entering into bankruptcy, and ultimately granted summary judgment against Ungerleider on all claims in an unpublished decision. The district court certified that its decision constituted a final judgment in accordance with Fed. R. Civ. P. 54(b), and this appeal followed.

## DISCUSSION

The sole issue on appeal is whether the district court correctly held that the purported oral agreement between Ungerleider and Gordon was unenforceable under the parol evidence rule. Ungerleider argues that the oral agreement was enforceable as a contemporaneous agreement that induced the signing of the written agreement. Ungerleider also argues that the parol evidence rule should not apply because the reference to "other good and valuable consideration" in the written agreement rendered the written agreement incomplete. For the reasons set forth below, we reject these arguments and affirm the judgment of the district court.

## I

Florida law, of course, recognizes the parol evidence rule. "[E]vidence of a prior or contemporaneous oral agreement is inadmissible to vary or contradict the unambiguous language of a valid contract. This rule applies when the parties intend that a written contract incorporate their final and complete agreement."

5

<u>Johnson Enters. of Jacksonville</u> v. <u>FPL Group</u>, 162 F.3d 1290, 1309 (11th Cir. 1998) (citation and internal quotation marks omitted); <u>see</u> <u>J.M. Montgomery Roofing Co.</u> v. <u>Fred Howland, Inc.</u>, 98 So.2d 484, 485-86 (Fla. 1957).  The rule is one of substantive law, not evidence, so it is applied by federal courts sitting in diversity.  <u>See</u> <u>Johnson Enters.</u>, 162 F.3d at 1309 n.47.

Ungerleider argued before the district court that "parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument."  <u>See</u> <u>Mallard</u> v. <u>Ewing</u>, 121 Fla. 654, 664, 164 So. 674, 678 (1935).  Indeed, Florida courts recognize such an "inducement" exception to the parol evidence rule.  <u>Johnson Enters.</u>, 162 F.3d at 1309-10 (citing <u>Mallard</u>).  However, the party submitting parol evidence under this exception carries a heavy burden of proof.  "The inducement exception `requires the [oral] agreement to be shown by evidence that is <u>clear</u>, <u>precise</u>, <u>and</u> <u>indubitable</u>; that it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, and that they narrate the details exactly and that their statements are true.'"  <u>Id</u>. at 1310 (alteration in original) (quoting <u>Mallard</u>, 121 Fla. at 664, 164 So. at 678).

The district court did not address Ungerleider's argument.  Instead, "[b]ecause of the specific and comprehensive nature of the written agreement," it

6

gave no credence to the "oral representations which occurred after, and which contradict, the written agreement." We need not remand for the district court to consider the inducement exception in the first instance, i.e., whether there was "clear, precise, and indubitable" evidence of the oral agreement, because we hold as a matter of law that the inducement exception is inapplicable.

Under Florida law, the inducement exception does not apply where "the alleged oral agreement relate[s] to the identical subject matter embodied in the written agreement and . . . directly contradict[s] an express provision of the written agreement." Linear Corp. v. Standard Hardware Co., 423 So.2d 966, 968 (Fla. App. 1 Dist. 1982); see also Bond v. Hewitt, 111 Fla. 180, 185, 149 So. 606, 608 (1933) ("[W]here a written instrument does not purport to contain the entire agreement between the parties thereto, nor to have been intended as a complete statement or whole contract, and where such instrument was executed pursuant to a parol agreement and in part performance thereof, parol evidence is admissible when consistent with, and not contrary to, such written instrument." (emphasis added)). The Supreme Court of Florida made this clear in McComb v. Hygeia Coca-Cola Bottling Works, 137 Fla. 260, 188 So. 219 (1939), in which it rejected the plaintiff's claims that he was entitled to lifetime employment by virtue of an

7

oral promise made to induce him to sign a release of liability. The court presented

the issue as follows:

> When a release of a claim for personal injuries is executed and delivered
> in the form, viz: "For the sole consideration of the sum of One Hundred
> Sixty and 00/100 Dollars . . . received from Hygeia Coca Cola Bottling
> Works, Inc., I do hereby acknowledge full satisfaction and discharge of
> all claims . . .", can it be shown by parol testimony that there was a prior
> or contemporaneous additional consideration for said release?

Id. at 265-66, 188 So. at 221. The court answered no. "If the plaintiff is allowed to

show on the trial of the cause other considerations flowing from the alleged injury,

then the rule against varying the terms of a written instrument will be violated." Id.

at 266, 188 So. at 222. The court expressly considered, but declined to follow,

Mallard. See id.

Here, the alleged oral agreement entitling Ungerleider to an additional 1.2

million shares of stock directly contradicts paragraph 3 of the written agreement,

which states that Ungerleider was "entitled to receive the [Phoenix] Common

Stock referred to in paragraph 5 hereof and no other stock or other consideration."

We see no distinction between paragraph 3 here and the reference to plaintiff's

"sole consideration" in McComb. The boilerplate "other good and valuable

consideration" referred to in the preamble of the written agreement is not enough to

avoid the obvious inconsistency between the alleged oral agreement and paragraph

3. Therefore, Ungerleider's reliance on the inducement exception is unavailing.

8

The decision of the Florida Supreme Court in <u>Jackson</u> v. <u>Parker</u>, 153 Fla. 622, 15 So.2d 451 (1943), is not to the contrary. In that case, the plaintiffs were heirs intestate to Gladys P. Monroe, who, with her husband, had sold a home to defendants Henry and Annibelle Jackson. The terms of the sale were that the Jacksons would pay the Monroes $37.50 monthly, up to a total of $4,500, but only while Gladys Monroe and her husband lived. To effectuate the sale, the Monroes deeded the property to the Jacksons, who in turn executed and returned a promissory note secured by a mortgage on the property. The Monroes shortly thereafter executed a release for the note and mortgage, which they placed with the note and mortgage in a safety deposit box. After Mrs. Monroe's death, the executor of her estate refused to deliver the release to the defendants, but even without it the defendants stopped making payments on the note. Mrs. Monroe's heirs sought to foreclose, and the court was faced with the question of whether parol evidence was admissible to determine the effect of the release and the purpose of the various documents:

> Here we have four written instruments -- a deed, a mortgage, a note, and a complete release and satisfaction of the mortgage and note. Both the mortgage and note and the release were found in the lock-box of the mortgagee . . . something over seven years after the deed and mortgage were executed. . . . [W]hy was the release executed long before most of the payments on the mortgage note fell due, and why was the release not actually delivered to the mortgagors immediately after it was executed, or at least while the mortgagees were still living? Surely the mortgagees

9

had some object in view when they executed this release and acknowledged it before a notary public soon after the mortgage was made to them, though it then had nearly ten years to run, and then left the release along with the mortgage and note in their lock-box at their bank. When a person dies leaving in his lock-box a mortgage and also a release of that mortgage, there must be some explanation somewhere, if it can be found. What was the reason for leaving this release?

Id. at 636, 15 So.2d at 458-59. In deciding whether the parol evidence was competent, the court set forth several principles of law, including the inducement exception of Mallard that "parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change, or reform the instrument." Id. at 639, 15 So.2d at 460. However, the court was not relying on the inducement exception to permit parol evidence to directly contradict the terms of a written agreement. Instead, the inducement exception was one of several principles of law suggesting that the court could consider parol evidence as to the purpose and effect of several related documents, each duly executed and valid on their face. Cf. Navy Mut. Aid Ass'n v. Barrs, 732 So.2d 345, 347 (Fla. App. 1 Dist. 1998) ("Parol evidence . . . is admissible to show the intent of the parties where several documents are part of one transaction and must be considered in pari materia to understand the transaction."). Therefore Jackson in no way undermines the holding of McComb that parol evidence may not directly contradict a contemporaneous written

10

agreement, even if the oral agreement was made to induce assent to the written agreement. Indeed, the same rule is followed in other jurisdictions. See, e.g., Bernstein v. Financial Indem. Co., 263 Cal. App.2d 324, 329, 69 Cal. Rptr. 543, 547 (Ct. App. 2 Dist. 1968); Cantrell v. Lemons, 119 Colo. 107, 109, 200 P.2d 911, 912 (1948); Pepsico Truck Rental v. Eastern Foods, 145 Ga. App. 410, 410-11, 243 S.E.2d 662, 663 (Ct. App. 1 Div. 1978); Frimel v. Blake, 360 S.W.2d 258, 260-61 (Mo. Ct. App. 1962); Cornhusker Dev. & Inv. Group v. Knecht, 180 Neb. 873, 878, 146 N.W.2d 567, 571 (1966); Dora v. Dora, 392 Pa. 433, 437, 141 A.2d 587, 590 (1958); Gantt v. Van der Hoek, 162 S.E.2d 267, 272 (S.C. 1968); Hull-Dobbs, Inc. v. Mallicoat, 57 Tenn. App. 100, 104, 415 S.W.2d 344, 346 (Ct. App. 1966).

In sum, the inducement exception permits parol evidence of a contemporaneous oral agreement to "vary, change, or reform" a written instrument, Mallard, 121 Fla. at 664, 164 So. at 678, but not to directly contradict it, McComb, 137 Fla. at 265-66, 188 So. at 221-22; Linear Corp., 423 So.2d at 968. This will not always be an easy distinction to draw, but the distinction appears elsewhere in the parol evidence rule. For example, parol evidence is not necessarily barred if the written agreement is incomplete, as long as the parol evidence does not contradict the written agreement. Jackson, 153 Fla. at 637, 15 So.2d at 459;

11

Mallard, 121 Fla. at 663, 164 So. at 678. Similarly, "[t]he rule does not necessarily exclude extrinsic proof . . . that there exists a contemporaneous independent agreement amounting to a separate transaction." Schwartz v. Zaconick, 68 So.2d 173, 175 (Fla. 1953). However, even in that situation the parol evidence may not contradict the terms of the written agreement. Anderson v. Ax, 104 Fla. 294, 298, 139 So. 798, 799 (1932); see also Schwartz, 68 So.2d at 176 (declining to consider parol evidence of contemporaneous oral agreement that makers of promissory note were not required to pay interest as specified in note); Johnson v. Johnson, 403 So.2d 1388, 1390 (Fla. App. 2 Dist. 1981).

Here, we have no difficulty in concluding that the parol evidence does more than "vary, change, or reform" the written agreement. It directly contradicts the written agreement. Therefore, it is not admissible under the inducement exception to the parol evidence rule.

## II

Finally, Ungerleider argues that the reference to "other good and valuable consideration" rendered the written agreement incomplete. While that may sometimes be the case, see Jackson, 153 Fla. at 637, 15 So.2d at 459, we do not believe it to be the case here. This is not a case where the consideration recited was so nominal that one would necessarily expect that other consideration was

12

involved.  Compare id. ("Both the deed and the mortgage expressed a consideration

of $10 `and other valuable considerations.'").  Indeed, "[t]he chief and most

satisfactory index to determine the intent of the parties to an agreement as to

whether they intended their written contract to be a complete and final statement of

the whole transaction is whether or not the particular element of the alleged

extrinsic negotiation is dealt with at all in the writing."  Greenwald v. Food Fair

Stores Corp., 100 So.2d 200, 202 (Fla. App. 3 Dist. 1958).  Here, the written

agreement was carefully drafted and lists in detail each of the previous agreements

that were revoked and each of the payments made by Ungerleider that Harvest and

Phoenix were entitled to keep.  The agreement also states precisely where the

shares to which Ungerleider was entitled were to come from and how they were to

be registered:

> a. from Harvest a certificate representing 511,000 shares of [Phoenix]
> Common Stock, $.01 par value, registered in the name of [Ungerleider];
> and
> b. from [Phoenix] a certificate representing 689,000 shares of [Phoenix]
> Common Stock, $.01 par value, registered in the name of Independent
> Trust Corp. Cust. FBO Dr. Bruce Ungerleider Tr. No. 1205303 (243,000
> [Phoenix] shares), Independent Trust Corp. TTEE FBO Dr. Bruce
> Ungerleider Tr. No. 1608459 (58,500 [Phoenix] shares) and Bruce A.
> Ungerleider, M.D. (387,500 [Phoenix] shares).

Under the circumstances, it is unreasonable to believe that Gordon would have

agreed to give an additional 1.2 million shares of Phoenix stock to Ungerleider in

an undocumented collateral agreement, or that Ungerleider would have accepted such an informal agreement. Cf. Ungerleider, 936 F.Supp. at 916 ("The adversity between the parties was palpable.").

Furthermore, the parties expressly stated that the agreement of April 15 was a complete integration of the contract: "This Agreement contains the entire understanding of the parties and supersedes all previous verbal and written agreements. There are no other agreements, representations, or warranties not set forth herein." Paragraph 3 of the agreement further emphasizes that the agreement completely memorializes the parties' understanding as to the consideration due Ungerleider. Those provisions should be given effect. See 4 Williston on Contracts § 633, at 1014 (3rd ed. 1961) ("Since it is only the intention of the parties to adopt a writing as a memorial which makes that writing an integration of the contract, and makes the parol evidence rule applicable, any expression of their intention in the writing in regard to the matter will be given effect.").

Finally, even if the agreement were incomplete, Florida law "does not permit proof of an oral agreement for the purpose of imposing a further contractual obligation on one of the parties, of which there is no indication or suggestion in the written contract, when such obligation is not only inconsistent with, but repugnant to, other plain terms of the instrument." Florida Moss Products Co. v. City of

14

Leesburg, 93 Fla. 656, 661, 112 So. 572, 574 (1927); Jackson, 153 Fla. at 637, 15 So.2d at 459. The purported oral agreement here is "not only inconsistent with, but repugnant to," the written agreement, and it is therefore unenforceable.

## CONCLUSION

The district court's judgment is AFFIRMED.