Bruce A. UNGERLEIDER,
M.D., Plaintiff,

v.

Robert P. GORDON, et al., Defendants.

No. 95–568–CIV–T–23E.

United States District Court,
M.D. Florida,
Tampa Division.

Aug. 7, 1996.

Barton S. Sacher, Jeffery W. Sacher, Hornsby, Sacher, Zelman, Stanton, Paul & Beiley, P.A., Miami, FL, for Bruce A. Ungerleider, M.D.

Burton W. Wiand, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Clearwater, FL, for Robert P. Gordon and Harvest International of America, Inc.

Peter E. Calamari, David E. Mollon, Hertzog, Calamari & Gleason, New York City, for Robert J. Conrads.

Charles M. Harris, Jr., Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Phoenix Information Systems, Inc.

## ORDER

MERRYDAY, District Judge.

The defendants, Robert P. Gordon ("Gordon"), Phoenix Information Systems Inc. ("Phoenix"), Harvest International of America, Inc. ("Harvest"), and Robert J. Conrads ("Conrads"), move to dismiss the plaintiff's first amended complaint (Doc. 3) (the "complaint"). Upon consideration, Conrads's motion (Doc. 17) is **GRANTED,** and the remaining motions (Docs. 5 and 7) are **GRANTED IN PART** and **DENIED IN PART.** On or before August 26, 1996, the plaintiff shall file a second amended complaint that is consistent with the rulings contained in this order.

The following facts are alleged in the complaint and are assumed to be true for purposes of resolving the dismissal motions. The plaintiff is one of the principal investors in Phoenix, a start-up company attempting to develop a travel reservations system to be used in the United States and abroad. In excess of ten written agreements memorialize the plaintiff's interests in the company. Defendant Gordon is the chairman and sole owner of Harvest, the primary stockholder in Phoenix.

In response to Phoenix's need for additional capital, the plaintiff proposed a plan to obtain funding from a well-known investor, George Soros ("Soros"). The parties agreed in writing that the plaintiff would receive a finder's fee should Soros eventually invest in Phoenix. Shortly thereafter, Phoenix retained defendant Conrads to secure the additional financing for the company.

Informing the plaintiff that Conrads succeeded in his efforts and located a potential investor, the defendants expressly refused to reveal the identity of the investor. The de-

fendants advised the plaintiff that the investor was unwilling to assist unless the plaintiff relinquished his contractual interests in Phoenix. The plaintiff was told that the relinquishment of his rights and the consequent receipt of the additional financing were necessary to avoid the company's financial collapse.

To negotiate a resolution of these issues, the parties each retained counsel and entered a settlement agreement in April of 1993 (the "agreement"). This voluminous and comprehensive agreement (1) revokes each of the previous agreements between the parties (including the finder's fee agreement), (2) obligates Phoenix and Harvest to transfer 1.2 million shares of Phoenix stock to the plaintiff, (3) expressly precludes the plaintiff from receiving any additional consideration (in the form of securities or otherwise), (4) contains an integration clause providing that the terms of the agreement constitute the parties' final understanding, and (5) includes a general release provision releasing each of the defendants from any and all preexisting claims.[1]

Despite this comprehensive and fully integrated contract, the plaintiff claims that Gordon (acting on behalf of himself, Phoenix, and Harvest) orally promised an *additional* 1.2 million shares of Phoenix stock and other interests to induce the plaintiff into signing the agreement. On the day the parties executed the agreement, Gordon delivered to the plaintiff a stock certificate representing the additional 1.2 million shares of stock.

A few days later, Gordon (again acting on behalf of himself, Phoenix, and Harvest) asked the plaintiff to return the stock certificate for the ostensible purpose of effecting a corporate name change. The defendants never returned the certificate to the plaintiff. The plaintiff subsequently learned that the "investor in the wings" was Soros, the subject of both the plaintiff's earlier efforts to secure additional financing for Phoenix and the finder's fee agreement.

Based on these allegations, the plaintiff seeks, among other things, to invalidate the agreement. He asserts claims for fraud, civil theft, conspiracy to commit fraud and civil theft, and violations of state and federal securities laws. The common premise on which these claims rely is that the defendants fraudulently induced the plaintiff to enter the agreement (1) by failing to disclose Soros's identity prior to executing the contract and (2) by orally promising to transfer an additional 1.2 million shares of Phoenix stock and other consideration.

■ The plaintiff asserts that the identity of the potential investor, Soros, was a material fact that the defendants were obligated to disclose. Yet the defendants specifically advised the plaintiff of the existence of an anonymous investor and specifically refused to reveal the anonymous investor's identity. Notwithstanding the defendants' refusal, the plaintiff executed the agreement. In other words, the plaintiff did not know who the investor was and he knew that he did not know. The plaintiff now resorts to the Court for relief from the consequences of his decision to proceed blindly.

As a matter of law, these facts fail to constitute an actionable omission.[2] The agreement results from an arms-length transaction involving studied negotiations between presumably sophisticated parties represented by competent counsel.[3] The adversity between the parties was palpable. Under the circumstances, the defendants were under no fiduciary or other common law or statutory obligation to disclose the identity of the potential investor. *See Pettinelli v. Danzig,* 722 F.2d 706 (11th Cir.1984).

Although outsmarted, the plaintiff was not defrauded. The plaintiff knew exactly what

---

1. Although Conrads was not a party to the agreement, the contract releases him from any preexisting claims.

2. The plaintiff does not allege that the defendants affirmatively misrepresented any facts (e.g., that the defendants told the plaintiff that there was no interested investor or that the investor was someone other than Soros). Nor does the plaintiff allege an actionable partial omission. A partial omission is the withholding of certain information that renders the provided information false or misleading. In this case, the defendants were forthright about the information they were withholding.

3. In the agreement, the plaintiff admits that he is "knowledgeable and experienced in financial and business matters."

he knew and, as well, knew exactly what he did not know. In a sense, he was fully informed and needed only to decide whether to proceed, recognizing a patent and fully apprehended gap in the pertinent information available to him. His decision to proceed with the execution of the agreement necessitates the legal conclusion that the "missing" information was immaterial.

In his attempt to invalidate the agreement, the plaintiff also relies on the alleged oral promise to convey the additional 1.2 million shares of stock and other consideration. This, too, fails to constitute fraudulent inducement. The agreement specifically requires the defendants to transfer 1.2 million shares of stock and expressly excludes any other consideration (e.g., additional shares of stock). Because the alleged oral promise directly contradicts the parties' written contract, the integration clause vitiates the plaintiff's right to receive additional shares of stock or any other consideration. The agreement, therefore, renders the plaintiff's reliance on the alleged oral promise perforce unjustifiable. *See Pettinelli v. Danzig*, 722 F.2d 706 (11th Cir.1984); *Saunders Leasing Sys. v. Gulf Cent. Distrib. Ctr.*, 513 So.2d 1303 (Fla. 2d DCA 1987).[4]

As discussed in the defendants' papers, the absence of an actionable omission or justifiable reliance precludes each of the plaintiff's claims and his attempt to invalidate the agreement. Accordingly, to the extent the plaintiff's complaint relies on events that occurred prior to or simultaneously with the execution of the agreement, the defendants' motions to dismiss are **GRANTED,** and the plaintiff's claims against the defendants are **DISMISSED.**

However, the events that allegedly occurred after the parties executed the agreement may provide a basis for relief. The allegations that Gordon (on behalf of himself, Phoenix, and Harvest) reacquired and retained the securities under false pretenses are sufficient facts to state a claim.[5] Accordingly, to the extent that the plaintiff's claims are based on conduct surrounding the repossession of the additional 1.2 million shares, the motions to dismiss are **DENIED.**[6]

The plaintiff, however, fails to lodge a cognizable grievance against defendant Conrads. The complaint fails to allege any facts (occurring after the execution of the agreement) that implicate Conrads. There is no allegation, for example, that Conrads had any involvement in the alleged delivery, repossession, or retention of the additional 1.2 million shares of stock. Accordingly, Conrads's motion to dismiss is **GRANTED,** and the complaint as to him is **DISMISSED.**

---

4. Further, the defendants delivered the additional stocks to the plaintiff as promised. The plaintiff cannot invalidate an agreement based on a promise that was ultimately fulfilled. The fact that the defendants allegedly repossessed the shares, although perhaps actionable in itself, is an insufficient basis for disturbing the parties' agreement.

5. The delivery of the additional stock certificate precludes a statute of frauds defense in this regard. *See* Fla.Stat. § 678.319.

6. The defendants invoke the economic loss rule as a bar to the plaintiff's fraud in the inducement claims. I understand that the Florida Supreme Court is considering the issue and may ultimately provide some guidance. *See, e.g., Raymond James, Inc. v. PK Ventures, Inc.,* 666 So.2d 174 (Fla. 2d DCA 1995), *review granted,* 675 So.2d 928 (1996). Based on the current uncertainty of Florida law in this regard, however, I am inclined to allow the fraud claims to survive this phase of the defensive motions.