SAILING W. BARUCH v. VINCENT C. GIBLEN.

164 So. 831.
Division B.
Opinion Filed December 19, 1935.
Rehearing Denied January 14, 1936.

*Gautier, Worley & Bouvier,* for Plaintiff in Error;
*Marion E. Sibley,* for Defendant in Error.

TERRELL, J.—Counsel in this case are widely at variance both as to what the record discloses and as to what questions are properly here for solution. An examination of the record reveals a controversy between plaintiff in error and defendant in error over the payment of an attorney's fee. Nothing more.

It appears that in February, 1932, one, Dorothy Firman, brought a common law action against Sailing W. Baruch, Plaintiff in Error, claiming damages in the sum of $100,000.00 for breach of promise and other alleged grounds. Defendant in error, Vincent C. Giblin, was employed by plaintiff in error to represent him in said common law action which was later transferred to the Federal Court for the Southern District of Florida on the ground of diverse citizenship, and about a year after such transfer it was compromised and settled by payment of $400.00 to the plaintiff.

After dismissal of the action Giblin demanded his fee for services rendered which, after some controversy, was refused. Giblin then brought this action claiming damages in the sum of $25,000.00. A trial resulted in a verdict and judgment for $6,250.00. A new trial was refused and the present writ of error was prosecuted to the judgment.

Baruch contends in substance that he contracted with a lawyer named Fritz Gordon to represent him in the former action, and that Gordon associated Giblin with him in the litigation, that Gordon and Giblin agreed between themselves as to the compensation they would charge, that Baruch had no contract with Giblin except through Gordon, that he (Baruch) has paid Gordon the full amount agreed to be paid him, that Gordon has receipted him in full therefor,

that Gordon and Giblin were for the purposes of this suit partners, and that Giblin cannot now repudiate his contract with Gordon and bring an action in general assumpsit for services rendered and recover a fee more than the contract price.

As against the contention of Baruch, Giblin contends that he was never the partner of Gordon for the purpose of this or any other litigation, that his contract for services and compensation was direct with Baruch, that he personally performed the services for which he seeks compensation with the full knowledge of Baruch, that said services extended over a period of fifteen months and were all the services that were performed on the case, that Baruch was advised that he (Giblin) was looking solely to him (Baruch) for his compensation, and that on his refusal to pay he brought this action *in quantum meruit* to recover the value of the services rendered.

On the issue thus raised by the contention of the litigants the evidence is plenary and in hopeless conflict. The jury nad the trial court resolved the issues in favor of the plaintiff. The nature of the contract between Gordon and Giblin and whether or not Baruch had an independent contract with Giblin were questions of fact well within the province of the jury to determine and since their finding is amply supported by the record we do not feel authorized to disturb it.

The sole question remaining for our consideration is whether or not the jury was prejudiced and in being so returned a verdict that was unreasonable and out of proportion to the value of the services rendered.

The matter of fixing attorney's fees often involves the most delicate technique of the lawyer's art. The primary, though not the exclusive, elements that enter into the de-

termination of such a fee are the amount and value of the services rendered, the responsibility undertaken, the importance and results of the litigation, and the time required in the conduct of it. In estimating the value of an attorney's services his skill, experience, professional reputation, and the amount of his business may be taken into consideration. The prices usually charged for similar services in the same court and community may also be shown, but that rule has no application in this case. 2 R. C. L., Par. 145, Page 1059. Naef v. Miller-Goll Mfg. Co., 176 La. 979; 147 So. 52; Munroe v. Birdsey, 102 Fla. 544, 136 So. 886.

There is but little analogy between the elements that control the determination of a lawyer's fee and those which determine the compensation of skilled craftsmen in other fields. Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that. It brings the court into disrepute and destroys its power to perform adequately the function of its creation.

A client's financial rating may have much to do with fixing the amount of his lawyer's fee when done by express contract and at arm's length, but when the lawyer comes into court relying on a *quantum meruit* that must be tested by the value of the services rendered. In other words, the fee fixed must bear a just relation to the prevailing philosophy with reference to the value of the lawyer's services and must bear some relation to the results secured. No one has an inherent right to practice

law. He does so by grace or franchise of the State and he accepts that franchise fraught with a public trust. In the experience of every practitioner conditions will arise that may preclude him from charging an adequate fee or in fact any fee whatever, but such cases make no difference in his loyalty and the zeal he exhibits in behalf of his client.

In cases where, as in this case, the attorney relies on an implied contract or a *quantum meruit* for compensation he is entitled only to the reasonable value of his services. It consequently becomes necessary to determine such reasonable value by resort to the record to ascertain the amount of labor performed and to the evidence of those competent to testify to determine the value of said labor or services, the skill expended, and such other elements as may enter into his compensation. An attorney interested in the outcome is competent to give evidence as to the value of his services, his legal knowledge, and his professional experience.

The testimony of duly qualified witnesses given as expert opinion evidence is admissible and may be offered in support of the issue as to the value of the services of an attorney though such issues may be proven by other evidence and other circumstances affecting it. The rule is generally approved that while expert testimony is strongly persuasive as to the value of an attorney's services it is not conclusive, neither is it binding on the court or the jury. Such evidence should be weighed with reference to the nature of the services, the time consumed in their performance, and other incidents peculiar to the case in which it was performed.

The prominence of litigants is ordinarily entitled to no consideration in fixing the value of an attorney's services, though it may sometimes be taken into consideration in

fixing the value of the legal services rendered. Graham v. Dubuque Specialty Mach. Works, 138 Ia. 456, 114 N. W. 619. In cases where there is an express contract for attorney's fees litigants will generally be bound by their contract regardless of the amount of the fee specified but where a *quantum meruit* is relied on the test of the fee is the amount and value of the services rendered. In such a case the prominence of litigants and their ability to pay can have little or no bearing in fixing the fee, no more than the size of the family or the economic condition of the attorney should have in fixing it.

In the case at bar the record discloses that as to the common law action out of which the instant case grew a declaration was filed laying damages at $100,000.00. Said common law action was in due course transferred to the United States District Court for the Southern District of Florida. A motion to dismiss was there entered, argued, and denied. Some other pleadings of a minor character were filed and after about a year of inaction the cause was compromised, settled, and dismissed for $400.00, one-half of which was paid to plaintiff and the other half to her attorney. The record does not disclose whether the settlement was voluntary or was induced by skill or otherwise, but the fact that it was settled on the basis it was would seem to be proof conclusive that the plaintiff had little faith in it.

The record further discloses that Baruch paid Gordon from twelve to fifteen hundred dollars, over five hundred of which was paid to Giblin. At the trial of the case at bar evidence was introduced showing that Baruch, the defendant, had the reputation of being worth $100,000.00, but his actual worth was not proven. The declaration in the common law action was permitted to be read to the jury

in the present case, and the plaintiff in the common law case was sworn and testified in the present case to facts that had no bearing on the issue involved. Both acts were, in the opinion of the writer and Mr. Justice BROWN, prejudicial to Baruch and since the common law case was settled without trial should not have been permitted. It is admitted by both litigants that the common law action was a case of blackmail.

A *quantum meruit* has reference to or means as much as he reasonably deserves for his services. It must be predicated on something tangible and definite like services performed, advice given, means expended, effort put out, or energy exploited through some other legally approved channel. The abstract statement of witnesses as to reputed worth or what constitutes a reasonable fee in a cause like this is not sufficient to support a verdict for *quantum meruit*. Their opinion must be supported by tangible evidence of something expended, done, or accomplished in behalf of the claimant.

All members of the Court agree to the foregoing statement of the law. A majority of the Court have reached the conclusion that the judgment below should be affirmed but the writer of this opinion and Mr. Justice BROWN are of the view that the judgment should be reversed and a new trial awarded because the evidence fails to meet the requirement of the rule as here announced and that a wrong concept was created in the mind of the jury as to the predicate on which its judgment for attorney's fees should have been measured.

It follows that the judgment below must be and is hereby affirmed.

Affirmed.

ELLIS, P. J., and BUFORD, J., concur.

Whitfield, C. J., and Brown, and Davis, J. J., concur in the opinion and judgment.