948 So.2d 1027 (2007)
PROGRESSIVE EXPRESS INSURANCE COMPANY, Petitioner,
v.
Donald SCHULTZ, Respondent.
No. 5D06-444.
District Court of Appeal of Florida, Fifth District.
February 23, 2007.
Rehearing Denied February 23, 2007.
*1028 Betsy E. Gallagher and Michael C. Clarke, of Kubicki Draper, P.A., Tampa, for Petitioner.
Glenn Klausman, of Jacobs & Goodman, P.A., Altamonte Springs, and Barbara Green, of Barbara Green, P.A., Coral Gables, for Respondent.
Anthony J. Russo of Butler Pappas Weihmuller Katz Craig LLP, Tampa, for Amicus, Florida Defense Lawyers Association.
John S. Mills of Mills & Carlin, P.A., Jacksonville, for Amicus, Academy of Florida Trial Lawyers.

ON MOTION FOR REHEARING AND CERTIFICATION
ORFINGER, J.
The amended motion for rehearing and certification filed by the respondent, Donald Schultz, is denied. However, we withdraw the opinion issued in this case on October 20, 2006, and substitute the following in its place.
Progressive Express Insurance Company seeks certiorari review of a decision rendered by the circuit court of Seminole County, Florida, acting in its appellate capacity. Progressive contends that the circuit court departed from the essential requirements of law by affirming a county court order awarding attorney's fees totaling $193,750. For the reasons explained below, we agree and grant the petition for certiorari.
Donald Schultz, a Progressive insured, was injured in an automobile accident. The next day, Mr. Schultz began chiropractic treatment with Dr. Jason Masters. After four months of treatment with Dr. Masters, Progressive elected to have Mr. Schultz examined by Dr. David Bennett, also a chiropractor. After Dr. Bennett concluded that no further chiropractic treatment was reasonable, necessary or related to the accident, Progressive stopped paying PIP benefits, leaving Mr. Schultz with a balance of $1,315.30 owed to Dr. Masters.
At Dr. Masters's suggestion, Mr. Schultz consulted with attorney Glen Klausman about pursuing a suit to recover for the unpaid chiropractic treatments. Following *1029 that consultation, Mr. Schultz retained Mr. Klausman, who then filed a PIP suit in county court, seeking to recover the outstanding chiropractic bills, mileage, attorney's fees and costs. Following extensive pretrial discovery, the parties settled the bulk of their dispute, leaving only the issue of the amount of attorney's fees and the appropriateness of a fee multiplier for resolution by the court. After a hearing, at which Progressive conceded Mr. Schultz's entitlement to attorney's fees, the county court approved Mr. Klausman's fee request for 193.75 hours at $400 per hour, resulting in a lodestar fee of $77,500. After the county court approved a 2.5 multiplier, the fee, now set at $1,000 an hour, totaled $193,750.
Progressive appealed the fee award to the circuit court, which affirmed the county court's judgment. Progressive now seeks certiorari review of the circuit court's decision, contending that the use of an attorney's fee multiplier was error and a manifest injustice. Mr. Schultz opposes review, arguing that this case fails to satisfy the high standard necessary for certiorari review. Because we conclude the fee award, particularly the application of a multiplier, is a manifest injustice, we elect to exercise our discretionary certiorari jurisdiction.
Certiorari review of a circuit court acting in its appellate capacity is only available when the circuit court does not afford procedural due process or departs from the essential requirements of law. Haines City Cmty. Dev. v. Heggs, 658 So.2d 523 (Fla.1995). A departure from the essential requirements of law is more than a simple legal error. "A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003). A "clearly established principle of law" can derive from a number of legal sources, including the constitution, statutes, rules of court and controlling case law. Progressive Express Ins. Co. v. Physician's Injury Care Ctr., Inc., 906 So.2d 1125, 1126-27 (Fla. 5th DCA 2005). In this case, the circuit court departed from controlling statutory and case law in affirming the county court's fee award.
While it would be easy to characterize this case as a run of the mill PIP dispute, admittedly, it was somewhat more than that. Mr. Schultz's attorney expended 193.75 hours, a significant amount of time, in a successful effort to undermine the credibility of Progressive's chiropractic expert.[1] However, it is hardly unusual that one side searches for evidence to impeach or discredit the other side's expert. The additional work is reflected in the lodestar amount, and, consequently, should have little or no impact on the need for a multiplier.
Underlying our analysis is the premise that both the applicable statute, section 627.428(1), Florida Statutes (2003), and the Rules Regulating the Florida Bar require that all fees awarded by the court be reasonable.[2] Section 627.428(1) authorizes the court to award reasonable attorney's fees to be paid by an insurer to an insured in the event the insured brings a successful action against an insurer under an insurance contract. Section 627.428 was intended "to discourage the contesting of valid claims against insurance companies *1030 and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue to enforce their insurance contracts." Ins. Co. of N. Am. v. Lexow, 602 So.2d 528, 531 (Fla.1992).
In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985), the supreme court adopted the federal lodestar approach, holding that in determining a reasonable attorney's fee, the federal lodestar methodology, the product of the reasonable hours expended times the hourly rate, "provides a suitable foundation for an objective structure." The federal lodestar approach establishes a "strong presumption" that the lodestar represents the "reasonable fee." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).
The concept of a fee multiplier first appeared in Florida jurisprudence in Rowe, and was refined by the supreme court in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla.1990).[3]Quanstrom set forth a number of factors to be considered in evaluating the need for a multiplier, including:
(1) [W]hether the relevant market requires a contingency fee multiplier to obtain competent counsel;
(2) [W]hether the attorney was able to mitigate the risk of nonpayment in any way; and
(3) [W]hether any of the factors set forth in Rowe are applicable. . . .
555 So.2d at 834. In later cases, the ability to obtain competent counsel rose to prominence in determining under what circumstances a multiplier was necessary and appropriate. See Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403, 411 (Fla.1999) (holding that "[a] primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it").
Because Mr. Schultz did not testify at the fee hearing, we have nothing to suggest that he had any difficulty obtaining competent counsel to pursue his PIP claim, other than Mr. Klausman's statement that the attorney handling Mr. Schultz's third-party liability claim was not interested in pursuing Mr. Schultz's PIP case. In our view, that lack of evidence alone may be fatal to the claim for a multiplier. As was explained in Tetrault v. Fairchild, 799 So.2d 226 (Fla. 5th DCA 2001):
A second reason for denying application of the multiplier . . . is the Quanstrom limitation: the market conditions must be shown to require it. In other words, it must be proved that but for the multiplier, plaintiff could not have obtained competent counsel in the area. Plaintiff's counsel attempted to make this showing by himself testifying that he would not have taken the case without the multiplier. Since the test is whether plaintiff would have had substantial difficulty in obtaining . . . competent counsel within the area to take the case without the multiplier, whether plaintiff's counsel would have taken the case only on that basis is immaterial. The question is whether other competent counsel would have done so.
Id. at 234 (Harris, J., concurring specially).
The notion that evidence should support the plaintiff's difficulty in obtaining competent *1031 counsel is hardly novel. Our supreme court said years ago that "[b]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Sun Bank of Ocala v. Ford, 564 So.2d 1078, 1079 (Fla.1990) (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)) (emphasis added).
Common sense also plays a role here. We are not so isolated from the world around us to know that few people have any difficulty retaining competent counsel in these circumstances. Our docket, and the dockets of the trial courts in Central Florida, have hundreds, and perhaps thousands, of PIP suits pending at any given time. It seems that few insureds, if any, have difficulty obtaining competent counsel to represent them. To the contrary, every television station and telephone book, and many billboards and buses, call out with ads from lawyers seeking to represent the injured.
We also choose to exercise our discretionary jurisdiction in this case because judges have a special responsibility in determining reasonable fees for both attorneys and expert witnesses. Miller v. First Am. Bank & Trust, 607 So.2d 483 (Fla. 4th DCA 1992). While the standard for certiorari review is narrow, it "also contains a degree of flexibility and discretion" which is appropriate to utilize here. Haines City Cmty. Dev., 658 So.2d at 530. "Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefore, a very important factor in the administration of justice, and if it is not determined with proper relation to that fact[,] it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It [sic] does more than that; it brings the court into disrepute and destroys its power to perform adequately the function of its creation." Miller, 607 So.2d at 485, n. 4 (quoting Baruch v. Giblin, 122 Fla. 59, 164 So. 831, 833 (1935)).
The testimony at the fee hearing was informative. Mr. Klausman testified that the only time he charged $400 per hour was when he testified as a fee expert for other lawyers.[4] Additionally, Mr. Klausman acknowledged that the accident was a "fender-bender." More significantly, however, Mr. Schultz's fee expert described the case thusly:
A Well, an IME case is going to be a fifty/fifty shot under these circumstances anyway. You've got a minor impact, car drivable afterwards, you've got no hospitalization, no medical doctor, excessive chiropractic treatment over a four-month period where the plaintiff is treating still three times a week when the IME takes place four months later almost five months later. And in the IME there's no objective signs of injury at all clearly documented by Dr. Bennett [the "IME" physician]. . . . He only has some subjective complaints which if you look at Masters' [the "treating" physician] notes, and this is critical when you're looking at a PIP case, there is no sign of improvement with the treatment that's been going on. It is entirely foreseeable that a jury in this case would say, you know what, this guy has six thousand dollars' worth of PIP treatment *1032 already. The defense is going to say, ladies and gentlemen, enough is enough. . . .
. . . .
. . . Plus there was a surface EMG that was done here and paid. The surface EMGthere's a question from the insurance industry whether or not it's even a legit test and in this particular case the medical records do not document any radiculopathy and would not document this need for an EMG. Dr. Bennett found that also.
Q So that would have hurt Dr. Masters' credibility?
A Right, running a test that is questionable, but not warranted in any event in this particular case.
Armed with this same information, Progressive stopped paying Mr. Schultz's PIP benefits. While in hindsight that decision may have been wrong, it does not seem unreasonable, unwarranted or outrageous. And, it hardly seems to justify attorney's fees of $1,000 per hour.
Our jurisprudence, because of the ability to obtain a fee multiplier in long shot cases, routinely approves fees that reward lawyers for pursuing cases that have little chance of success. The riskier the case, the greater the multiplier. See Holiday v. Nationwide Mut. Fire Ins., 864 So.2d 1215 (Fla. 5th DCA 2004) (upholding the use of a multiplier when the trial court found that "both attorneys took the case as a `flyer' in the hope of `getting lucky' and recovering a huge fee"). "An attorney operating on a contingency-fee basis pools the risks presented by his various cases: cases that turn out to be successful pay for the time he gambled on those that did not. To award a contingency enhancement under a fee-shifting statute would in effect pay for the attorney's time (or anticipated time) in cases where his client does not prevail." Burlington v. Dague, 505 U.S. 557, 565, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992). A sensible judicial system should not encourage lawyers to bring suits that are extreme long shots. See In re Oracle Secs. Litigation, 852 F.Supp. 1437, 1452 (N.D.Cal.1994).
In this case, the use of a multiplier fails in several respects. First, there was no evidence that Mr. Schultz had any difficulty obtaining competent counsel to represent him. Second, and, in large part, this was a fairly unremarkable contract case involving a dispute over $1,315. Relying on the unique facts of State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla.1990), Mr. Schultz defends the court's use of a multiplier. In Palma, the supreme court affirmed an award of $253,500 in attorney's fees using a contingency-risk multiplier in an insured's action against State Farm to recover $600 for an unpaid thermographic examination. However, in doing so, the supreme court took pains to note that its approval of the fee was based upon the "extraordinary circumstances present" and because State Farm decided to "go to the mat" over the bill for thermographic studies. The court further observed that "the real issue was not an incidental medical bill. This record is clear that State Farm hoped to prove a point in this case regarding bills for this medical procedure that would avail it in other cases nationally." Id. at 838. This case does not involve similar circumstances. Third, and contrary to Mr. Schultz's assertion, the amount in controversy is relevant to the court's consideration of a multiplier. Palma, 555 So.2d at 838 (instructing that amount in controversy "would be a significant factor in some circumstances" when courts consider fee multipliers).
In Ziontz v. Ocean Trail Unit Owners Association, Inc., 663 So.2d 1334, *1033 1335-36 (Fla. 4th DCA 1993), Judge Farmer observed:
[J]udges and lawyers [have lost] . . . sight of a truth they formerly accepted almost universally: viz., that there is an economic relationship to almost every legal service in the marketplace. The value of any professional service is almost always a function of its relationship to something elsei.e., some property or other right. . . . Trial judges and lawyers used to accept a priori the idea that, no matter how much time was spent or how good the advocate, the fair price of some legal victories simply could not exceedor, conversely, should not be less thansome relevant sum not determined alone by hours or rates. Since Rowe, that all seems lamentably forgotten.
In our view, there is nothing about this case that calls for a fee multiplier. "Fees of the kind awarded here threaten to make the respect of nonlawyers for judicial control of feesindeed, for the very legal system itselfa thing of the past. Because of the manifest justice rule in this instance, . . . we conclude that this fee award must be set aside." Id. at 1336. "No court is obliged to approve a judgment which so obviously offends even the most hardened appellate conscience and which is so obviously contrary to the manifest justice of the case. Indeed, it is obliged not to." Miller, 607 So.2d at 484.
We conclude that the circuit court departed from the essential requirements of law in affirming the county court's order allowing the use of an attorney's fee multiplier. Accordingly, we grant the writ and quash the circuit court's judgment to the extent that it sanctions the use of an attorney's fee multiplier in this case.[5]
PLEUS, C.J., and MONACO, J., concur.
NOTES
[1] Progressive's attorney's fees expert opined that 143.25 hours was reasonable.
[2] "An attorney shall not . . . charge, or collect . . . [a] clearly excessive fee. . . ." R. Regulating Fla. Bar 4-1.5(a).
[3] Rowe and Quanstrom were premised on the United States Supreme Court's decisions approving fee multipliers in Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). The Supreme Court receded from the use of multipliers in federal fee shifting cases in Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).
[4] We, too, are aware of the fees that prevail in the Central Florida market. The fee approved here, $400 an hour before the multiplier, certainly pushes the upper limit for hourly fees, even in the most complex litigation.
[5] We are troubled by the lodestar fee awarded by the county court, particularly the hourly rate deemed to be reasonable. However, we will leave that issue for another case when the scope of our review is broader.