LEWIS, J.,
dissenting.
Today the majority surprisingly and, in my view, incorrectly endorses a universal implementation of alternative attorney fee recovery clauses with an astonishing disregard for its simultaneous evisceration of the well-established distinction between statutorily authorized attorney fee awards and attorney fees assessed as damages under the concept of indemnity. The majority additionally disregards decades of controlling precedent simply because it is unfavorable to its holding and approves awards of attorney fees not actually incurred, an award of money readily and clearly in violation of due process when assessed as indemnification. When attorney fees are improperly awarded, a “species of social malpractice [results] that undermines the confidence of the public in the bench and bar.... [I]t brings the court into disrepute and destroys its power to perform adequately the function of its creation.” Baruch v. Giblin, 122 Fla. 59, 164 So. 831, 833 (1935). Unlike the majority, I refuse to embrace contractual convenience over our inexorable constitutional obligation to ensure no person is deprived of life, liberty, or property without due process of law. Therefore, for the reasons that follow, I dissent.
This case involves a claim for attorney fees as an element of damages in an indemnity action between First Baptist and Compass. The majority holds that this indemnity contract, along with all other contracts that trigger an award of attorney fees if an alternative fee recovery clause is in the contract, is “constrained by Rowe and its progeny” to an attorney fee award set by the trial court, including enhancement factors without regard to attorney fees actually incurred or paid. See Majority Op. at 982. There are several flaws in the majority’s opinion with the biggest failure stemming from its refusal to recognize the foundational differences between statutorily required attorney fees and fees assessed as damages pursuant to indemnity, contractual or common law. These differences demonstrate why the enhancement-lodestar method of calculating and awarding attorney fees is fundamentally and constitutionally inconsistent -with the concept of indemnity under the contract before the Court today or under the common law. Instead of addressing these constitutional implications, the majority simply disregards them and forces the square peg of indemnification into the round hole of statutory attorney fees and the enhancement-lodestar calculation method. To understand why the enhancement-lodestar method is inappropriate in the indemnity context, it is necessary to examine the history of the statutory lodestar method.
Differing Purposes
In and around the 1970s and early 1980s, the federal courts began developing a method of enhancing and increasing court awards of attorney fees when the fees were required by rule or statute. See generally Samuel R. Berger, Court Awarded Attorneys’ Fees: What is “Reasonable”?, 126 U. Pa. L.Rev. 281, 281-82, 304 (1977). The number of statutes and rules in which the United States Congress was authorizing and mandating awards of attorney fees was rapidly increasing. Id. *985 The attorney fee provisions were generally in connection with substantive statutes and were designed and intended to encourage private litigation of the substantive statutory provisions. Id. at 306. These statutes directed federal courts to award “reasonable” fees to prevailing parties in public policy enforcement actions; however, the term “reasonable” was not generally defined in the statute. Id. at 305. These statutory directives left the federal courts with the responsibility of developing a method of calculating attorney fees to be awarded a prevailing party that would give substance to the term “reasonable” consistent with the congressional purpose behind these statutes. Id.
As courts and commentators have noted, the legislative purpose behind federal fee-shifting statutes was to promote the private enforcement of public civil rights. See id.; see also Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 832 (Fla.1990). One commentator stated:
Although for many of the statutory attorneys’ fee provisions little legislative history exists, it is clear from the legislative history available that the fundamental purpose of these [statutory fee-shifting] provisions is to encourage full enforcement of the substantive rights to which they are attached. The statutes are premised upon the proposition that private enforcement is essential to the effectuation of the substantive statutory scheme and that the award of attorneys’ fees is essential to effective private enforcement.
[[Image here]]
[For example,] [t]he House Committee on the Judiciary explained the purpose of the Civil Rights Attorney’s Fees Awards Act of 1976 as follows:
The effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens. Although some agencies of the .United States have civil rights responsibilities, their authority and resources are limited. In many instances where these laws are violated, it is necessary for the citizen to initiate court action to correct the illegality. Unless the judicial remedy is full and complete, it will remain a meaningless right. Because a vast majority of the victims of civil rights violations cannot afford legal counsel, they are unable to present their cases to the courts. In authorizing an award of reasonable attorney’s fees, [the Act] is designed to give such persons effective access to the judicial process where their grievances can be resolved according to law.
Berger, supra at 306-07 (citing H.R.Rep. No. 94-1558, 2d Sess. 1 (1976) (first footnote omitted)). The United States Supreme Court in Newman v. Piggie Park Enterprises, Inc., shared a similar understanding of the purpose of the Civil Rights Act of 1964:
When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. A Title II suit is thus private in form only. When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a ‘private attorney general,’ vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys’ fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for coun *986 sel fees — not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.
390 U.S. 400, 401-02, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (footnotes omitted).
Thus, the historical and foundational congressional purpose behind statutory provisions that directed an award of statutory attorney fees to a prevailing party was to afford individuals “who have been aggrieved by a violation of the statute to vindicate their rights, both for themselves and, acting as private attorneys general, for others similarly situated.” Berger, supra at 309. Consequently, the concept of “reasonable” statutorily authorized attorney fees was designed and intended to benefit those which achieve the full enforcement of congressional policy by providing a financial incentive for lawyers to take the cases of these aggrieved individuals. Id. at 310-11; see also Hensley v. Eckerhart, 461 U.S. 424, 449, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (Brennan, J„ dissenting) (“no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand”). It was in these types of public policy enforcement cases and with this congressional purpose in mind that the federal courts adopted an enhancement-lodestar method. See Hensley, 461 U.S. at 433, 103 S.Ct. 1933.[8] This approach was not limited to attorney fees paid or incurred, but was a foundation that included far more elements to enhance or increase the amount of money awarded.
In contrast, fees assessed as an element of damages under the concept of indemnity serve a fundamentally different purpose. Indemnification provides a party entitled to indemnification the right to claim reimbursement for its actual loss, damage, or liability from the responsible party, which includes reasonable attorney fees actually incurred in the underlying litigation as an element of damages. See Black’s Law Dictionary 837 (9th ed. 2009); see also Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999) (“A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party”); Jemco, Inc. v. United Parcel Serv., Inc., 400 So.2d 499, 502 (Fla. 3d DCA 1981) (citing Fontainebleau Hotel Corp. v. Postol, 142 So.2d 299, 300 (Fla. 3d DCA 1962)). Indemnification serves the purpose of holding the indemnified party harmless by shifting the entire loss or damage incurred by the indemnified party — who has without active negligence or fault “been obligated to pay, because of some vicarious, constructive, derivative, or technical liability” — to the responsible party who should bear the cost because it was that party’s wrongdoing for which the indemnified party is held hable. Allstate Ins. Co. v. Metropolitan Dade Cnty., 436 So.2d 976, 978 (Fla. 3d DCA 1983); see also Rosati v. Vaillancourt, 848 So.2d 467, 470 (Fla. 5th DCA 2003) (“indemnity is a right which inures to one who discharges a duty owed by him but which, as between himself and another, should have been discharged by the other” (citing Houdaille Indust., Inc. v. Edwards, 374 So.2d 490, 492-93 (Fla.1979))).
*987 Thus, the two types of attorney fee awards, statutory or rule and contractual or common law, are significantly different and serve wildly differing purposes. The enhancement-lodestar method of awarding attorney fees was applied in and developed to encourage the enforcement of statutory substantive rights created by legislative action to encourage the filing of legal actions by providing an incentive for attorneys to represent clients. In contrast, the purpose of assessing attorney fees as an element of damages in indemnity actions is to reimburse the indemnified party for actual losses or damages incurred through some form of vicarious, constructive, derivative, or technical liability. As a result, the purpose for the creation of the enhancement-lodestar method of calculating statutorily authorized attorney fee awards differs fundamentally from the purpose behind determining and assessing attorney fees as damages under the concept of indemnity. When different methods of awarding fees to prevailing parties serve fundamentally differing purposes, different methods of calculating fees may apply to accomplish their independent purposes and to ensure that fee awards are constitutionally permissible. Quite simply, and contrary to the majority’s opinion, attorney fees assessed as damages under the concept of indemnity are constitutionally incompatible with the enhancement-lodestar method of fee calculation for statutory or rule required attorney fees.
Methods of Calculation
The enhancement-lodestar method is appropriate for statutorily authorized fee awards because it creates a structure of attorney fee calculation and award that ensures lawyers are compensated for the full market value of their time and effort. See Berger, supra at 315. By paying counsel the full market value of their services, the enhancement-lodestar method eliminates the financial disincentives that have traditionally prevented lawyers from taking cases that provide statutorily authorized fees, but in an attorney fee amount that is not economically practical. An enhancement-lodestar approach in theory promotes the full enforcement of the statutory substantive rights associated with the fee-shifting statutory provisions. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010). Furthermore, in cases where the prevailing party is entitled to statutorily authorized fees and is represented by counsel on a contingent basis, the enhancement-lodestar method accounts for the risk of nonpayment by enhancing fees through a contingency risk multiplier. See Berger, supra at 324-35; see also John Leubsdorf, The Contingency Factor in Attorney Fee Awards, 90 Yale L.J. 473, 477 (1981); Quanstrom, 555 So.2d at 833; Florida Patient’s Comp. Fund v. Rowe, 472 So.2d 1145, 1151 (Fla.1985).
The enhanced lodestar method is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. Rowe, 472 So.2d at 1150-51. The “reasonableness” of the hourly rate is calculated by combining several criteria delineated in the Florida Rules of Professional Conduct with the “market rate” charged by comparable attorneys in the community. Id. at 1150-51. Once a “lodestar” figure is calculated, the trial court can either increase or decrease the figure based on a “contingency risk” factor and the “results obtained.” Id. at 1151. Additionally, in the statutory context, “[w]hen the prevailing party’s counsel is employed on a contingent fee basis, the trial court must consider a contingency risk factor when awarding a statutorily-directed reasonable attorney fee.” Id. (emphasis supplied). Florida adopted the enhanced lodestar approach in connection with statutory attorney fee awards in Rowe as a *988 “suitable foundation for an objective structure” of awarding reasonable statutorily authorized attorney fees. Id. at 1150.
To prevent excessive attorney fee awards in the statutory context, we established two caps on the amount of attorney fees that could be awarded:
First, we indicated that “because the party paying the fee has not participated in the fee arrangement between the prevailing party and that party’s attorney, the arrangement must not control the fee award.” However, we qualified that statement and effectively established a cap on the fee by holding that “in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client.” Second, we set limitations on the contingency fee multiplier, stating: “[I]n contingent fee cases, the lodestar figure calculated by the court is entitled to enhancement by an appropriate contingency risk multiplier in the range from 1.5 to 8.”
Quanstrom, 555 So.2d at 831 (citations omitted).
Subsequent to Rowe, the United States Supreme Court drastically altered the contingency risk aspect of the federal lodestar calculation. See Quanstrom, 555 So.2d at 831-33; see also Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989); Pennsylvania v. Delaware Valley Citizens’ Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). We have noted that it appears that in Delaware Valley, the Supreme Court unanimously rejected the exclusive use of a contingency risk multiplier in the federal lodestar method of calculating statutorily awarded fees. See Quanstrom, 555 So.2d at 831-32. In Blanchard, the Supreme Court held that a contingency fee agreement between a plaintiff and his counsel constitutes only one factor to be considered in assessing the reasonableness of an award of attorney fees. Blanchard, 489 U.S. at 93, 109 S.Ct. 939; see also Quanstrom, 555 So.2d at 832. Therefore, a contingency fee agreement could not, standing alone, independently limit the trial judges discretion in setting a statutorily authorized fee. Blanchard, 489 U.S. at 93, 109 S.Ct. 939; see also Quanstrom, 555 So.2d at 832. The Supreme Court lessened the independent value of the contingency risk factor in the federal lodestar calculation to prevent an undesirable emphasis ... on the importance of the recovery of damages in civil rights litigation. Blanchard, 489 U.S. at 95, 109 S.Ct. 939. Furthermore, the Court noted that unlike personal injury litigation, “Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.” Id. at 96, 109 S.Ct. 939.
In light of the Supreme Court’s holdings in Blanchard and Delaware Valley, the opportunity arose in Quanstrom to reevaluate certain aspects of the Florida lodestar calculation in the statutory context and to “clarify our opinion in Rowe concerning its application under the various types of fee-authorizing statutes.” Quanstrom, 555 So.2d at 829. We recognized that:
Different types of cases require different criteria to achieve the legislative or court objective in authorizing the setting of a reasonable attorney’s fee. Although we reaffirm our decision in Rowe concerning the lodestar approach as the basic starting point, we find that the use of the contingency fee multiplier should be modified. For a better understanding, we find it appropriate to place attorney’s fee cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and es *989 tate and trust matters. These categories are not intended to be all-inclusive.
Id. at 833 (footnote omitted). With respect to the first category, we agreed with the Supreme Court’s holding in Blanchard that the contingency risk factor should only be considered as one of the twelve factors delineated in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974), that guide a trial court’s determination of a reasonable statutorily authorized attorney fee. Quanstrom, 555 So.2d at 834.[9]
With respect to statutory awards of attorney fees in tort and contract cases, we held that the “multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established.” Id. However, we modified the application of the contingency risk multiplier to require that a party demonstrate to the trial court that at least one of the following three factors is present:
(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client.
Id. Finally, when the fees are statutorily awarded in family law, eminent domain, and trust and estate proceedings, we determined that a contingency fee multiplier is not normally justified either because contingency fee arrangements are ethically prohibited in that area of law or because the party entitled by statute or rule to fees cannot demonstrate the potential risk of nonpayment. Id.
Unlike the enhancement-lodestar method of calculating fees in the statutory context, which relies on several policy and financial factors to develop a “reasonable” rate, the assessment of fees under the concept of indemnification is only concerned with reimbursing the prevailing party for expenses and costs actually incurred. See Borg-Warner Acceptance Corp. v. Philco Fin.Corp., 356 So.2d 830, 832 (Fla. 1st DCA 1978) (Indemnity pursuant to a contractual indemnification agreement is “payable by one party to another as an indemnity for fees reasonably contracted or incurred, not by one party to the other’s lawyer, either as a debt or a penalty.”) (emphasis supplied); see also Black’s Law Dictionary 837 (9th ed. 2009) (indemnity constitutes “[a] duty to make good any loss, damage, or liability incurred by another”) (emphasis supplied). As a result, an indemnified party cannot be reimbursed for damages that it never sustained.
Along the same lines, the contingency risk aspect of the enhancement-lodestar method is incompatible with the assessment of attorney fees as damages under the concept of indemnification because accounting for the risk of nonpayment by enhancing attorney fee amounts is irrelevant in the indemnity context. A reim *990 bursement obligation of a party responsible for indemnity cannot be increased by a contingency risk never incurred, nor can an indemnity obligation be multiplied or altered based on anything other than the damages actually sustained which are represented by the actual costs and expenses incurred or paid by the indemnified party during the course of the underlying action. See Nelson v. Marine Group of Palm Beach, Inc., 677 So.2d 998, 999-1000 (Fla. 4th DCA 1996) (holding that a prevailing party on a contractual indemnity action was “precluded from receiving an amount in excess of the actual fee charged by the law firm” because “[t]he object of contractual attorney’s fees is to make the prevailing party whole. Thus, an adversary should not have to pay more than the amount the client is obligated to pay.”).
Furthermore, to accommodate the congressional and legislative purpose behind statutorily authorized attorney fee awards, the enhancement-lodestar method intentionally incorporates social policy considerations that may be relevant when calculating a “reasonable” statutory fee award to accomplish a statutory purpose. See supra, footnote 9. However, these policy considerations are not only irrelevant to the assessment of attorney fees as damages in cases such as that before us today, they are detrimental to the purpose of assessing attorney fees in all indemnity actions. Thus, the public policy considerations that justify the application of the contingency risk multiplier in the enhancement-lodestar method have no bearing on the assessment of attorney fees in an indemnity action. We noted in Bell v. U.S.B. Acquisition Co., Inc., that
A primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it. In Rowe, we observed that the benefit of the contingent fee system is to provide a party with “increased access to the court system and the services of attorneys.” We recognized in Rowe that the availability of attorney’s fees would have the effect of encouraging plaintiffs to bring meritorious claims that would not otherwise be economically feasible to bring on a non-contingent fee basis. These goals are consistent with the Florida Constitution.
Similarly, in his concurring opinion in Lane [v. Head, 566 So.2d 508, 513 (Fla.1990) (Grimes, J., concurring) ], Justice Grimes emphasized that “[t]he justification for a contingency fee multiplier is that without providing an added incentive for lawyers to obtain higher fees, clients with legitimate causes of action (or defenses) may not be able to obtain legal services.” The importance of this policy consideration is highlighted by the fact that the very first factor listed in Quanstrom for courts to consider in determining if a multiplier should be utilized in tort and contract cases is “whether the relevant market requires a contingency fee multiplier to obtain competent counsel.”
734 So.2d 403, 411 (Fla.1999) (emphasis in Bell). The obligation of a party responsible for indemnification to reimburse an indemnified party never involves the consideration of statutory public policy concerns. Rather, the only factor that informs the assessment of attorney fees as damages in an indemnity action is the costs and expenses actually incurred or paid by the indemnified party during the underlying litigation. See Borg-Warner, 356 So.2d at 832; see also Nelson, 677 So.2d at 999-1000.[10] By approving the *991 application of the enhancement-lodestar method here, the majority improperly allows the indemnity agreement between First Baptist and Compass to be manipulated by the desires of two entities that are not before the Court today, First Baptist’s insurance éompany and its counsel, into a method of fee calculation that is directly incompatible with the intent and purpose of the indemnity agreement between First Baptist and Compass. See Dade Cnty. School Bd., 731 So.2d at 643 (“Indemnity contracts are subject to the general rules of contractual construction; thus an indemnity contract must be construed based on the intentions of the parties.”) (emphasis supplied).
A Proper Approach
These critical differences between the statutory award of attorney fees and fees assessed as damages under the concept of indemnity are only the beginning of the flaws in the majority’s opinion. We have never held, as the majority does today, that an indemnified party is entitled to an assessment of damages in the form of attorney fees in an amount greater than the indemnified party’s actual obligation to pay its attorney. Rather, several Florida courts have articulately and consistently held the opposite: that the attorney fees assessed to a prevailing party in an indemnity action cannot exceed those expenses that party actually incurred from the action for which it is indemnified. See, e.g., Mallard v. Ewing, 121 Fla. 654, 164 So. 674, 678-79 (1935); Blount Brothers Realty Co. v. Eilenberger, 98 Fla. 775, 124 So. 41, 41 (1929); Brett v. First Nat. Bank of Marianna, 97 Fla. 284, 120 So. 554, 554 (1929); Nelson, 677 So.2d at 999-1000; Dunn v. Sentry Ins., 462 So.2d 107, 108 (Fla. 5th DCA 1985); Jemco, 400 So.2d at 502-03.
For example, in Jemco, UPS contracted with Jemco to install a conveyer system in a building that UPS was constructing. 400 So.2d at 500. During installation, a Jemco employee was injured. Id. The employee filed an action against UPS, which, in turn, filed a third-party action against Jemco for contractual and common law indemnity. Id. Eventually, UPS settled with the employee and was successful in its indemnity action against Jemco. Id. Although UPS had a fee agreement with its attorney for $50 per hour, the trial court awarded UPS damages for attorney fees at an hourly rate of $87.50, which it determined to be a reasonable assessment of fees. Id. at 502. The Third District reversed the award, holding that Jemco’s contractual obligation to indemnify UPS extended no further than to reimburse UPS for the costs and expenses it actually incurred while defending the action against the injured employee. Id. at 502-03. Similarly, in Dunn the Fifth District correctly stated that
[a] contractual provision that the losing party will pay the prevailing party’s attorney’s fees is an agreement for indemnification, i.e., to indemnify the prevailing party for fees reasonably contracted or incurred. Because the agreement is one for indemnification, the prevailing *992 party under this agreement can recover no more than the amount he has actually paid or obligated himself to pay his attorney.
462 So.2d at 108 (emphasis in original) (citation omitted).
These cases serve as examples of the overriding principle that applies in all indemnity actions, contractual or common law: an indemnified party is prohibited from profiting on the indemnifying party’s promise to pay attorney fees by recovering a judgment for attorney fees larger than the amount the indemnified party actually paid for legal representation. See Lashkajani v. Lashkajani, 911 So.2d 1154, 1158-59 (Fla.2005) (“[p]rovisions in ordinary contracts awarding attorneys fees and costs to the prevailing party ... exist to protect and indemnify the interests of the parties, not to enrich the prevailing party” (quoting Eilenberger, 124 So. at 41)); see also Borg-Warner, 356 So.2d at 832.
In a similar manner, in Trustees of Cameron-Brown Investment Group v. Tavormina, 385 So.2d 728, 730 (Fla. 3d DCA 1980), the Third District addressed an analogous issue to that presented here. Here, Compass concedes that it is contractually obligated to indemnify First Baptist for attorney fees, however, it disputes how those fees should be calculated. Compass contends that First Baptist is entitled to $170 per hour, which represents the basic hourly rate trial counsel actually charged First Baptist’s insurance company and was ultimately paid. Conversely, First Baptist contends that Compass’s fee obligation is controlled by an alternative fee recovery clause contained in the written fee agreement, which provides that if a party other than the insurer pays the fee, then the fee amount will be the greater of the $170 or a reasonable amount to be determined by the court. The trial court determined that First Baptist could recover from Compass “a reasonable fee ... even if that amount is greater than the amount [trial] counsel charged First Baptist Church.” Compass Constr., Inc. v. First Baptist Church of Cape Coral, Florida, Inc., 61 So.3d 1273, 1275 (Fla. 2d DCA 2011).[11]
In Cameron-Brown, several lenders filed a foreclosure action on a series of construction loans. 385 So.2d at 729. The trial court found the construction loans to be usurious and limited the lenders’ foreclosure recovery accordingly. Id. The trial court also found that the lenders were contractually entitled to attorney fees, but limited the lenders’ recovery of attorney fees to the actual expenses incurred based on three cases from this Court. Id. at 729-30. All three cases stand for the proposition that an indemnified party is only permitted to recover damages of attorney fees in the amount the indemnified party has incurred to pay its attorney. See Mallard, 164 So. at 678-79; Eilenberger, 124 So. at 41; Brett, 120 So. at 554.[12]
*993 On appeal, the lenders argued the cases were jurisprudential relics that conflicted with a more recent line of cases that awarded attorney fees on the basis of “rea-sonability.” Cameron-Brown, 385 So.2d at 729. Relying on Brett, Eilenberger, and Mallard, the Third District agreed with the conclusion reached by the trial court and held that the proper measure for awards of attorney fees based on contractual indemnity is “limited to the reasonable (read: non-excessive) expense actually incurred by the obligee thereunder: A party contractually entitled to his attorney’s fees may recover the amount he must pay his lawyer, or a reasonable fee, whichever is lower.” Id. at 731 (emphasis supplied) (parenthesis in original).
Thus, in both Cameron-Brown and this case the indemnified party was represented by counsel whose fee was memorialized in a written fee agreement. In both cases, the prevailing party requested the greater of either the fee provided in the written fee agreement or a “reasonable” fee to be determined by the trial court. The only difference between these cases is that the alternative fee recovery demand was memorialized in this written fee agreement. However, the presence or absence of a written alternative fee recovery clause does not change the similarity between the underlying issue before the Third District in Camercm-Brmm and the issue before us today, nor should it alter our conclusion. Unlike today’s majority opinion, the Third District’s well-reasoned opinion correctly holds that a trial court cannot force an indemnifying party to pay a larger award of attorney fees than the indemnified party actually paid its counsel. Id. at 730.
The Third District reached this conclusion by juxtaposing the two circumstances under which attorney fees may be awarded: (1) by contractual agreement, and (2) by statutory enactment. Id. at 730; see also Price v. Tyler, 890 So.2d 246, 250 (Fla.2004). In contractual indemnification cases, the first question a trial court must answer before awarding attorney fees is
not what a reasonable fee might be in the absence of any fee contract between the claiming party and his attorney, but whether the actual fee agreement against which the claimant seeks indemnity is unreasonable: Specifically, whether the agreement is excessive. ... If the fee is not excessive, and it is [enforceable] by both parties thereto, that fee should be awarded. If the fee is excessive, then the court should proceed to the determination of a “reasonable” fee ... based on the same factors it considered when it evaluated the fee contract.
Cameron-Brown, 385 So.2d at 731 (second emphasis supplied); see also Erickson Enters., Inc. v. Louis Wohl & Sons, Inc., 422 So.2d 1085, 1086 (Fla. 3d DCA 1982). Thus, when fees are assessed as a result of an indemnity obligation, a reasonable fee specifically articulated in a fee agreement mil be the proper measure of damages. Cameron-Brown, 385 So.2d at 731. As long as the agreed upon fee is not excessive, trial courts cannot decline to enforce these provisions. See Lashkajani, 911 *994 So.2d at 1158; see also Dunn, 462 So.2d at 108-09.
Today, the majority disregards decades of precedent demonstrating the foundational differences between statutorily authorized attorney fees and elements of indemnity damages permitted in indemnity actions. Instead, without any recognition that the two types of attorney fees have historically been treated differently, or explanation as to why all contracts that include alternative fee recovery clauses should be grouped together, the majority proclaims
The reasoning we used to uphold alternative fee recovery clauses with contingency fee alternatives in Kaufman, Moxley, and Wasser applies to alternative fee recovery clauses in general, regardless of the other basis for payment. Once a fee-shifting statute or contract triggers a court-awarded fee, the trial court is constrained by Rowe and its progeny in setting a fee that must be reasonable. This alleviates any concern that enforcing an alternative fee recovery clause will result in the nonprevail-ing party paying an unreasonable fee.
Majority Op. at 982 (emphasis supplied). In addition to the flaws discussed above, there are at least four more critical flaws in the majority’s analysis and conclusion.
First, as the majority recognizes, attorneys began including alternative fee recovery clauses in their fee agreements “in response to Rowe.” Majority Op. at 981 (emphasis supplied). Alternative fee recovery clauses provide courts with the ability to award higher statutorily authorized fees without violating Rowe’s command that “in no case should the court-awarded fee exceed the fee agreement reached by the attorney and his client.” 472 So.2d at 1151. Since these clauses are intended only to ensure reasonable statutorily authorized fees are awarded consistent with Rowe, they are irrelevant in cases where, as here, the trial court’s responsibility is to enforce reasonable fee agreements as damages and not to calculate reasonable statutory fee awards. See Dunn, 462 So.2d at 108-09.
Alternative fee recovery clauses, by definition, are also contrary to indemnification damages between the indemnified and the indemnifying parties for two reasons. First, as noted above, alternative fee recovery clauses are contrary to the damages approach of indemnity agreements because they allow for an assessment of attorney fees as damages in an amount greater than the indemnified party’s actual obligation to its counsel. See Dunn, 462 So.2d at 108 (“the prevailing party under [an agreement for indemnification] can recover no more than the amount he has actually paid or obligated himself to pay his attorney.”) (emphasis in original). Second, when one party indemnifies another, the indemnifying party agrees to make the indemnified party whole by reimbursing them for the damages and expenses actually incurred. Alternative fee recovery clauses, by their terms, are not reflective of either the indemnified party’s actual damages or expenses incurred. Thus, they cannot serve as a basis for recovery of damages under an indemnity agreement because they do not provide an accurate calculation of the indemnifying party’s obligation to the indemnified party for damages.
The second flaw in the majority’s holding arises from its mischaracterization of our holding in Quanstrom. The majority’s holding — that “[o]nce a fee-shifting statute or contract triggers a court-awarded fee, the trial court is constrained by Rowe and its progeny in setting a fee that must be reasonable” — is premised on the conclusion that this Court has previously treated statutory and contractual awards of fees *995 similarly. Majority Op. at 980-81, 982. To establish this connection, the majority erroneously states “this Court recognized that Rowe ⅛ prohibition against the court-awarded fee exceeding the fee agreement also applies where fees are awarded pursuant to a contractual fee-shifting provision.” Id. at 981.
In Quanstrom, the issue before the Court concerned the “setting of a reasonable attorney’s fee under the lodestar approach and require[d] a determination of whether a contingency fee multiplier must be utilized when determining the appropriate attorney’s fee to be paid to a prevailing insured pursuant to section 627.428, Florida Statutes (1987).” 555 So.2d at 829 (footnote omitted). As noted above, the Quanstrom Court modified the contingency fee multiplier articulated in Rowe in response to two subsequent United States Supreme Court decisions. Id. at 830-83. To provide guidance in applying the contingency fee multiplier the Court noted:
Different types of cases require different criteria to achieve the legislative or court objective in authorizing the setting of a reasonable attorney’s fee.... [W]e find it appropriate to place attorney’s fee cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters. These categories are not intended to be all-inclusive.
Id. at 833. It is abundantly clear that the “tort and contract claims” category developed in Quanstrom, and relied on by the majority for the proposition that the contract in this case falls under Rowe and its progeny, concerned only the statutorily authorized award of attorney fees and not the fees assessed as damages under contracts. See id. at 833-34. Several facts support this conclusion.
First, Quanstrom and Rowe are cases whose facts and analyses concern only the statutory award of reasonable fees. Quanstrom, 555 So.2d at 829, 831; Rowe, 472 So.2d at 1149. Second, the Court’s justification in Quanstrom for developing the three categories listed above — to facilitate the application of the contingency fee multiplier to the lodestar method of calculating a reasonable fee — serves only to assist the application of Rowe to statutorily authorized fee awards. See Quanstrom, 555 So.2d at 833-34. Fees assessed as damages through an indemnity obligation are never multiplied or increased. Rather, fee agreements in indemnity actions can only be enforced as reasonable or decreased if they are unreasonably excessive. See Cameron-Brown, 385 So.2d at 731. These first two facts demonstrate that this Court’s intent in developing the “tort and contracts” category was focused specifically on the statutory awards of attorney fees. Third, the Quanstrom Court twice explicitly stated the limits of its holding. First, in the opening paragraph, the Court stated “we find it necessary to clarify our opinion in Rowe concerning its application under the various types of fee-authorizing statutes.” Quanstrom, 555 So.2d at 829 (emphasis supplied). Second, during its discussion of the torts and contracts category the Court again “emphasize[s] that the criteria and factors utilized in [tort and contract] cases must be consistent with the purpose of the fee-authorizing statute or rule.” Id. at 834 (emphasis supplied). Thus, the Quanstrom Court specifically and articulately explained that the second category of “torts and contracts” cases can only be interpreted as relevant to the statutory award of fees on contract claims and not contracts that, by their terms, provide a basis to indemnify for actual damages of attorney fees.
Recognizing that these facts do not support the conclusion that Rowe’s applica *996 tion extends to all contracts, the majority was forced to omit the unfavorable portions of Quanstrom from its opinion in order to piecemeal the law together to fit its desired holding.[13] This Court has never held that Rowe is applicable to all contract claims or applicable at all in indemnification actions where attorney fees are actual damages. Rather, cases like Jemco, Dunn, Eilenberger, and Cameron-Bromi demonstrate that the majority has either disregarded or misunderstood the fundamental differences between: (1) fees awarded to a party based on the Legislature’s decision to authorize by statute the award of fees in certain disputes; and (2) fees assessed as damages to a party by virtue of the terms of its contractual agreement with another party.
The third flaw in the majoritys opinion is that every decision, including the conflict decision, relied on to support the majority’s conclusion is factually distinguishable from this case. Specifically, every case cited by the majority involves the statutory award of attorney fees and not fees assessed as actual damages under an indemnity contract. See Wilson v. Wasser, 562 So.2d 339, 340 (Fla.1990) (medical malpractice); Florida Patient’s Comp. Fund v. Moxley, 557 So.2d 863, 864 (Fla.1990) (medical malpractice); Kaufman v. MacDonald, 557 So.2d 572, 573 (Fla.1990) (medical malpractice); Quanstrom, 555 So.2d at 830(PIP); Perez-Borroto v. Brea, 544 So.2d 1022, 1023 (Fla.1989) (medical malpractice); Miami Children’s Hosp. v. Tamayo, 529 So.2d 667, 667 (Fla.1988) (medical malpractice); Wolfe, 758 So.2d at 731-32 (negligence); Tampa Bay Publ’ns, Inc. v. Watkins, 549 So.2d 745, 746 (Fla. 2d DCA 1989) (unpaid wages). Contrary to the majority’s belief, the drastic differences between the purpose and calculation of the statutory award of fees and fees assessed as damages under an indemnity contract provide clear and logical distinctions between this case and every case relied on by the majority to quash the Second District’s holding below.
Finally, the majority asserts that today’s holding will “alleviate[ ] any concern that enforcing an alternative fee recovery clause will result in the nonprevailing party paying an unreasonable fee.” Majority Op. at 982. Ironically, today’s opinion exemplifies the award of an unreasonable fee totally unrelated to actual damages. First Baptist’s insurance company and trial counsel negotiated a noncontingent written fee agreement at an hourly rate of $170. This rate reflected a rate that the insurance company and trial counsel determined to be reasonable based on their professional relationship. Based on that rate and the number of hours reasonably expended defending First Baptist from the wrongful death action, First Baptist was obligated to pay trial counsel $19,618. Compass, 61 So.3d at 1275.[14] Therefore, First Baptist was contractually entitled to only claim reimbursement for its actual loss, damage, or liability of exactly $19,618 from Compass, and any award greater than $19,618 would violate both the indemnity agreement between Compass and *997 First Baptist and due process limitations. See Black’s Law Dictionary 837 (2009); see also Eilenberger, 124 So. at 42 (“The payee or holder is not permitted to make a profit on the debtor’s promise to pay attorney’s fees by recovering judgment for a larger amount than he actually pays, or is obligated to pay, his attorney. The object and intent of the contractual stipulation for attorney’s fees is that the [indemnified party] shall be at no expense in procuring the services of his attorney.”)
For this reason, the trial court here incorrectly determined that the alternative fee recovery clause contained within the agreement between the insurance company and trial counsel permitted the court to circumvent the terms of the indemnity agreement by assessing a fee that more than doubled the amount actually charged and billed in this case. Instead of rejecting this amount as contrary to law and unreasonable, the majority inconceivably applauds the amount and condones its universal application. Ironically, the majority proclaims that, by upholding alternative fee recovery clauses under all circumstances, it has constructed a new system that ensures a nonprevailing party will never pay an unreasonable fee. Majority Op. at 982. This statement could not be further from the truth. As the facts of this case clearly demonstrate, by approving fees in indemnity cases that greatly exceed the indemnifying party’s damages or actual reimbursement obligation, today’s majority has authorized the widespread arbitrary deprivation of property in violation of due process.
We are charged with the responsibility of preventing parties from paying unreasonable attorney fees. Unlike the majority today, the Third District’s opinion in Cameron-Brown provides an approach that actually accomplishes that goal in indemnity actions. 385 So.2d at 731. Courts may modify contractual indemnity assessments when the fee agreement between the prevailing party and its counsel is unreasonably high, but it is not our place to intervene when a contract between a prevailing party and its counsel reflects an at or below market rate. I refuse to destroy decades of precedent and violate the due process rights of our citizens by joining the majority on its unnecessary quest to approve the use of alternative fee recovery clauses in all contracts. I would hold that the two cases certified for conflict are distinguishable and I would approve of the holdings in both. Fundamental differences separate the assessment of damages in the form of attorney fees in indemnity actions, as in this case, and the statutorily authorized award approach approved by the Fourth District in Wolfe. Accordingly, I dissent.

. We acknowledged this much in Quanstrom when we noted that the "federal courts developed the lodestar method of determining attorney's fees to apply to a special class of cases, in which Congress had enacted fee-authorizing statutes to pay fees to prevailing plaintiffs for the purpose of obtaining public enforcement of Congressional acts.” Quanstrom, 555 So.2d at 831, 833.

. Those factors are:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the “undesirability” of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Quanstrom, 555 So.2d at 834 (citing Blanchard, 489 U.S. at 91 n. 5, 109 S.Ct. 939).

. The policy considerations that serve as a foundation for the application of the contingency risk multiplier also permeate other as *991 pects of the lodestar calculation. For example, we noted in Bell that
Even if we were to dispense with utilizing a multiplier in a contract case, one of the factors set forth in rule 4-1.5(b) of the Rules Regulating the Florida Bar to be considered in determining a reasonable fee is whether the fee is fixed or contingent. Thus, even without a multiplier, the court would be authorized to award a greater fee based on the contingent nature of the fee agreement, or reduce a fee award where there was no risk of nonpayment. In fact, an upward adjustment of a fee under these circumstances would be analogous to a court’s application of a multiplier.
734 So.2d at 411.

. The trial court determined that counsel was entitled to a "reasonable” hourly rate of $350 per hour, which was more than double the $170 hourly rate counsel agreed to receive in his written fee agreement with the insurance company. Compass, 61 So.3d at 1274-75.

. For example, in Eilenberger, the holder of a delinquent promissory note was awarded a judgment that included "reasonable attorney's fees” of $1,000. 124 So. at 41. This Court reversed the award of attorney’s fees because no testimony was presented indicating that the "plaintiff had paid or expressly agreed to pay his attorney the sum of $1,000 for his services, nor any facts from which it appears that plaintiff is liable to his attorney in that sum quantum meruit for the reasonable value of his services under an implied contract.” Id. Rather, the Court stated:
[A] contract to pay attorney's fees is one, not to enrich the holder of the note, but to protect and indemnify him against expenditures necessarily made or incurred to protect his interest. *993 The rule is the same in actions at law as in suits in equity. The inclusion of attorney’s fees as a part of a judgment is an allowance to the holder of the note, not to the attorney. The payee or holder is not permitted to make a profit on the debtor’s promise to pay attorney’s fees by recovering judgment for a larger amount than he actually pays, or is obligated to pay, his attorney. The object and intent of the contractual stipulation for attorney's fees is that the payee or holder of the note shall be at no expense in procuring the services of his attorney.
Id. at 41-42 (emphasis supplied) (citations omitted).

. Even the majority’s parenthetical citation of Quanstrom's holding is misleading. Specifically, the majority states that Quanstrom holds that "the caps discussed in Rowe are applicable to contract claims." Majority Op. at 981. As the above analysis indicates, the majority tells only half of the story and relies only on the parts of Quanstrom that support its misguided conclusion.

. This amount represents the $170 hourly rate billed by trial counsel multiplied by the 115.40 hours the trial court determined trial counsel reasonably expended representing First Baptist.